Mr. Justice Wheeler
delivered the opinion of the court.
This is an appeal from a judgment of the district court of Walker county,' refusing bail to the appellant, a prisoner brought before the court on a writ of habeas corf us.
It appears that the prisoner had been committed to jail by an examining court consisting of two justices, in Montgomery county, on a charge of murder. He was subsequently brought before the district court upon habeas corpus; and upon an examination of the witnesses and hearing the evidence, both for and against the accused, the court adjudged'the imprisonment legal and remanded the prisoner. From this judgment the prisoner appealed; and now, by his counsel, insists that the judgment is erroneous; that it be reversed, and that he be admitted to bail.
The case is brought before us at so late a day of the session that we should be inclined to defer its decision until the next term, did we feel any difficulty as to its correct disposition; or, did not the nature of the case seem to require as speedy a determination as may be consistent with a due consideration of the important question now first presented for our decision. That question is, will an appeal lie from the award of *521 the'district court remanding a prisoner charged with a crime,, upon the return and examination, upon a habeas corpus? The decision of this question must depend mainly upon our own local laws.
The jurisdiction of this court is conferred and defined by the 3d section of the 4th article of the constitution, which declares that' “the supreme court shall have appellate jurisdiction only, which shall be co-extensive with the limits of the state; but in criminal cases and in appeals from interlocutory judgments, with such exceptions and under such regulations-as the legislature shall make.”
The same section provides that “the supreme court and judges thereof shall have power to issue the writ of habeas corpus.” The 10th section provides that “ the district court shall have original jurisdiction in all criminal cases;” and that “the said courts and the judges thereof shall have power to issue all writs necessary to enforce their own jurisdiction, and give them a general superintendence and control over inferior jurisdictions.” The Bill of Bights, section 9, declares that “ all persons shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident or the presumption great; but this provision shall not be so construed as to prohibit bail after indictment found, upon an examination of the evidence by a judge of the supreme or district court, upon the return of a writ of habeas corpus,” etc.
By the habeas corpus act, 4 Stat. 1840, p. 32, section 5, it is-provided that the supreme or district court or any judge thereof may issue the writ, and “ that the court or judge before whom the prisoner shall be brought, shall, without delay, proceed to inquire into the cause of his imprisonment, and shall either discharge him, admit him to bail, or remand into custody, as the law and evidence shall require.”
From these several provisions it is apparent:
1st. That the authority and jurisdiction of the supreme and district courts and of the several judges thereof, in proceedings upon habeas corpus in criminal cases, are co-extensive and concurrent.
2d. That the court or judge before whom the writ is return *522 able is not confined to the questions of law arising upon the return, but may examine into the merits of the commitment, and hear the allegations and proofs arising thereon, in a summary way, and decide both the law and facts,- and dispose of the party “ as the very truth of the case shall require.” Id. sec. 6, and see 2 Kent’s Oom. 2d ed. 30, 31. And hence the conclusion seems plainly deducible, that no appeal could have ■been intended from the decision of the judge or court upon a habeas corpus in a criminal cause; for:
1. An appeal in such case would present the anomaly of an appeal from one judge or court to another, whose powers and jurisdiction ar#co-ordinate and concurrent with, and in no respect different from the former; for, as to the granting of the writ, and all the subsequent proceedings upon a habeas corpus, ■there is no respect in which the authority, powers and juris•diction of any one judge, of either a district or the supreme court, differ from those of every other or of either court. The authority conferred by the statute upon each judge and court is the same. Neither sustains to the other the relation of a superior or an inferior/ and the word superior or inferior can with no propriety be applied to the jurisdiction exercised by either. It is in each the same, one and identical. An appeal, therefore, in such case would seem to involve an absurdity. It would be an appeal from a jurisdiction to itself.
The writ of habeas corpus, it has been said, “ is in the nature of a writ of error, to examine the legality of the commitment,” per Marshall, O. J., 3 Pet. 202. And the issuing of the writ and the action upon it have been held to be the exercise of appellate jurisdiction. 4 Cranch, 101; 7 Pet. 573. “This court, said Mr. J. Baldwin in Holmes v. Jennison, 14 Pet. 651, has declared this power to be appellate and not •original; so I shall take it on its authority, though if the point was new it would seem to me to be the exercise of a special authority given by the judiciary act for the specific purpose therein set forth.Taking, however, the power to issue the writ and the action upon it to be appellate, then every district judge can exercise it to the same extent that this *523 or- a circuit court óan.” But whether the jurisdiction conferred by our laws in the present case be an appellate or a “special” original jurisdiction, it evidently is one and the same in each judge and court; and by whomsoever rightfully exercised, the effect and consequence is, in each instance, the same.
2. The character of the proceedings and the nature of the investigation and trial instituted under our statute seem also-to forbid the conclusion that an appeal was intended.
The rule of the English law doubtless is, that on habeas corpus the examination, as to guilt or innocence, cannot under any circumstances extend beyond the depositions or proofs' upon which the prisoner was committed. 1 Chit. Or. L. 129, Am. ed. of 1836, and cases cited from 2 Str. 1138. “ This would be so, even on habeas corpus before an indictment found, however loosely the charge might be expressed in the warrant of commitment.” Per Cowen, J., 1 Hill, 394. And in the case of The People v. McLeod, id. 377, which excited SO' much interest and elicited the most thorough investigation, it was held by the supreme court of Hew York that the provision in the revised statute of that state, which differs in no' material respect from the provision of the 6th section of our habeas corpus act, was not intended to give a party, on habeas corpus, the right of summary trial as to the question of guilt or innocence'; but merely to enable him, by evidence aliunde the return, to disprove the fact of his being detained on the process or proceeding set forth; or, perhaps, to show that by some subsequent event, e. g., a pardon, reversal of judgment, etc., it had ceased to be lawful cause of detention. Id. 404. “ Mere evidence of innocence,” it was said, “ cannot be used on habeas corpus as an argument for letting the prisoner to bail, if the application be after indictment found. And even when the application is before indictment, the right of inquiry as to guilt or innocence is limited to the depositions and proofs on which the commitment was ordered.”
It was, however, decided by the late supreme court in the case of The Republic v. Wingate, decisions of December term, 1845,- that after an indictment for murder the prisoner *524 was entitled to an examination of the witnesses as to his guilt or innocence, upon an application for bail. The principle of' the decision is, that a party may be entitled to bail after an indictment for a capital crime, and that any evidence which, would be admissible on the final trial before the jury may be received on an application for bail. The 9th section of the bill of rights before cited seems to have been intended as an affirmance of the principle asserted in this decision. If, then, evidence touching the question of gnilt or innocence may be received on an application for bail, after indictment, it is certainly admissible on habeas corpus, before indictment. And under this view of the law as asserted by the decision referred to, and affirmed by the state constitution, the practice adopted by the district court in the present instance, of an original examination on habeas corpus, as to the question of guilt or innocence, and not restricted to the depositions and proofs upon which the prisoner was committed, appears to have been warranted. If, then, this be regarded as the mode of trial,, on the return of a habeas corpus, recognized by the statute, it affords a strong inference against the supposition that an appeal from the award or decision upon it was intended. It can scarcely be supposed that even three judges will be able-as certainly to arrive at a correct determination upon an inspection merely of a written statement of the evidence as one who was present at the examination of the witnesses, and who, therefore, must possess very superior means of judging of their credibility and veracity, and of ascertaining “the very truth of the case.” The question in a case like the present must be, “ is the proof evident or the presumption great, ” that the prisoner is gvAlty of a capital crime? And this question,, it is apparent, the judge who heard the witnesses testify is far-more competent to decide than this tribunal upon a mere inspection of the evidence in the record.
Again, the determination of this question rests in the exercise of a sound discretion, and the court may lawfully bail or not, according to circumstances.- The practice of the English courts on this subject is shown- in the' following cases cited by *525 the supreme court of South Carolina in an interesting case reported in Dudley’s Law (S. C.), p. 295, and in 1 Hill, 398, n. e.:
“ One came up on habeas corpus charged with a commitment for robbery on the highway; the prosecutor, attending, insisted he was the man, and although eight affidavits of credible parties, proving him to be at another place at the time of the robbery, were read, yet the court refused to admit him to bail and remanded him until the assizes.” 2 Strange, 1138.
“But the court will look into the depositions and bail or not, •accordingly; and if committed for manslaughter, yet if the depositions made it murder, the court will not bail, and e con-verso.” Id. 1242.
In The King v. Marks, 3 East, 157, where the warrant of commitment contained a statement insufficient to constitute felony, and the depositions were very full and stated the offense with sufficient precision, the court refused to bail and remanded.
“ In the exercise of this general power, say the court, . . . there is no doubt that a judge, before whom a prisoner is brought, will look beyond the commitment, if necessary, and will bail or remand, according to circumstances. . . . He should not undertake to determine fully upon the guilt of a prisoner, and set him at liberty without bail and without day, however imperfectly the offense may have been charged in the commitment, or however strong the circumstances in his favor, proved by affidavits or collected from the examination. Such a power does not exist in any judge, in term time or at chambers, where any offense at all is alleged; such a power would be superior to the laws, wherever lodged. It would, to all purposes, be a dispensing power as effectual and dangerous as any that has been claimed or exercised under the most arbitrary governments.”
In the case of Yates v. The People, 6 Johns. 421, a distinguished judge declared that the determination upon habeas corpus rests in sound discretion; that to this point the authorities are infinitely numerous, and that this is of itself decisive against the right to a writ of error.
*526 Again, whether an appeal, if conceded, would afford a party wrongfully imprisoned a remedy, must depend upon the accidental circumstance of a session of this court during the period of such wrongful imprisonment.
But the 9th section of the habeas corpus act seems expressly to exclude an appeal by this clear and emphatic language:' “ No person remanded by such judgment, whilst the same continues in force, shall be at liberty to obtain any other habeas ■corpus for the same cause, or by another proceeding, to bring the same matter again in question.” It surely will not be denied that to take cognizance of the case on appeal would be, by another proceeding, “ to bring the same matter again in •question.” Again, it may well be doubted whether the decision upon habeas corpus be a final judgment. “ This order, it was said by a very learned jndge, is not and cannot be final; for it only discharges the party from any other confinement under the process under which he was arrested, but not from any other process which may be issued against him under the same indictment. The inquiry being merely preliminary to a trial, the order is only interlocutory, and can extend no farther than to the specific subjects of the inquiry, which can have no bearing upon the final result of the prosecution as to guilt or innocence.” Per Baldwin, J., 14 Pet. 622, 623. But see opinion of Taney, Ch. J., id. 562, 563, and Catron, J., id. 597.
Another eminent judge, whose opinion has been quoted upon another point, has said: “ It is absurd to pretend that the resolution of the supreme court to bail or discharge or remand a prisoner is anything like a final determination of his case.” Per Kent, Ch. J., in Yates v. The People.
If, then, the present be not a final judgment, being in a ■criminal case, the constitution itself excludes the right of appeal by clear and necessary implication. It gives the right of .appeal generally; “but in criminal cases and in appeals from interlocutory judgments, with such exceptions and under such regulations as the legislature shall make.” Thus clearly showing that an appeal from an interlocutory judgment in a criminal case was not intended, for interlocutory judgments and ■criminal cases are comprehended within the same provision *527 and restriction as distinct and independent subjects; and in respect to them the right of appeal is not allowed generally, but only “with such exceptions and under such regulations ” as may be prescribed by law.
The act to regulate appeals in criminal cases (acts 1846,330) contemplates an appeal only in case of conviction upon an indictment or criminal prosecution. This is manifest from the terms and obvious import of sections 1 and 5, and indeed is too apparent from the general tenor and provisions of the act to require a particular examination.
It is clear that sections 134 and 135 of the act “ to regulate proceedings in the district courts,” cited and relied on for the appellants, can have no application whatever to this case, for the reason that, being a criminal proceeding, it is not within the contemplation of the general provision, either of the constitution or the law giving the right of appeal in civil suits. The appeal, therefore, in this case cannot be supported under the general provision; especially since the legislature have exercised the power conferred, of regulating appeals in criminal cases. 3 Dall. 321; 1 Cranch, 212; 3 id. 159; 6 id. 307; 7 Wheat. 38, 45.
In every point of view in which we have considered this case, as affected by our own local laws, we are constrained to come to the conclusion that the right of appeal cannot be maintained. And were we to test the rights of the appellant by the principles of the English law, it is extremely doubtful whether we could arrive at a different conclusion.
The right has indeed been asserted with great zeal and ability, and has had the support of some names of very high authority in this country. In one case, Yates v. The People, 6 J. R. 337, it was decided that a writ of error would lie. But, even in that case, every lawyer will recognize, among the dissenting voices, those whose opinions have ever been regarded as entitled to the greatest weight, and for whose memory, on account of their eminent learning and talents, the profession entertain the greatest veneration — names distinguished among the brightest ornaments that have ever adorned the legal profession.
*528 In citing that case Chief Justice Taney, in Holmes v. Jennison, 14 Pet. 567, though laboring to sustain the doctrine of that solitary case, admits that “ there was, indeed, great division of ojúnion in the court, and so many eminent and distinguished judges dissented from the judgment given, that we do not feel authorized to refer to it as having settled the question in New York.” In the case in which this remark of the chief justice was made, a majority of the court do seem, upon that point, to have been of opinion that a writ of error would lie to reverse the judgment of the supreme court of Yermont,' pronounced in a summary proceeding by habeas corpus, though the court were so divided in opinion that no decision was in fact given. That case, however, differs essentially from the present. And it "was there said by Mr. Justice Baldwin, id. 617, to have been “admitted that in the whole course of the common law there is no one precedent of a writ of error upon the proceeding on a writ of habeas corpus.”
In the case before cited of Yates v. The People, in the court of errors of New York, the then chief justice, Kent, after reviewing the cases with his usual ability and learning, thus sums them up and states their result: “I now submit to the candor and judgment of this court whether I have not sufficiently shown that by the English law a writ of error will not lie in this case. IVe have the unanimous opinion of the court of C. B. in the time of Lord Coke. We have the resolutions of the house of commons in the reign of Queen Anne. We have the unanimous opinion of the court of K. B. in the time of G-eorge I.; and, lastly, we have the sanction of Lord Oil. Baron Comyn; and all this, without a single case, or decision, or precedent, or opinion to oppose to such a stream of authority.” Such was the opinion of at least one of the most distinguished judges that ever presided in a court of justice. It was concurred in by others, eminent for their learning, and is believed now to be the sense of the profession in England, and generally throughout the United States. So far as we have been able to look into the adjudged cases, we find the opinion as applied to a habeas corpus in a criminal case, generally maintained.
*529 If, in any case, a party, conceiving himself imprisoned without lawful authority, should desire to submit the question of the legality of his imprisonment to this court, the right to do so is secured to him by the constitution and laws, by an application here for the writ of habeas corpus in the first instance. "We would then be enabled to bring the witnesses before us, and to dispose of the case in a manner far more satisfactory, at least to ourselves, than we possibly .could do, were we authorized to entertain jurisdiction of the case on appeal.
In the case before us, however, we see nothing in the evidence embraced in the record to induce the belief that, had the case been brought before us in the first instance, the result would have been at all different from that arrived at by the district court before whom the evidence was taken.
"We are of opinion that the present is not a case in which an appeal is authorized by law, and, therefore, that this appeal be dismissed.