# REPORTS OF CASES

## DETERMINED IN

# THE SUPREME COURT,

## JANUARY TERM, 1862.

19  539
h144  636

## THE PEOPLE v. TINDER AND SMITH.

ADMISSION to bail in capital cases, where the proof is evident or the presumption great, may be made, under our Constitution, (Art. I, sec. 5) matter of discretion, and may be forbidden by legislation. In all other cases the admission to bail is a right of the accused which no Judge or Court can properly refuse.

The Criminal Practice Act, (Secs. 509, 510) so far as it makes the admission to bail matter of discretion in all cases where the punishment is death, unless the proof is evident or the presumption great, conflicts with the Constitution as above.

An indictment, under our Criminal Practice Act, is something more than a mere accusation based upon probable cause. It is an accusation based upon legal testimony of a direct and positive character, and is the concurring judgment of at least twelve of the grand jurors that, upon the evidence presented to them, the defendant is guilty.

A grand jury ought to find an indictment when all the evidence before them, taken together, is such as in their judgment would, if unexplained or uncontradicted, warrant a conviction by the trial jury; and if such evidence, unexplained or uncontradicted, would not warrant such conviction, they ought not to find an indictment.

An indictment for a capital offense furnishes of itself a presumption of the guilt of the defendant too great to entitle him to bail as matter of right under the Constitution, or as matter of discretion under the legislation of the State. It

creates a presumption of guilt for all purposes except the trial before a petit jury.

The finding of the grand jury by the indictment cannot be reviewed on the application for bail in capital cases. The statute makes no provision for preserving the testimony taken before the jury, and impliedly prohibits the disclosure of such testimony, except in certain cases specially named.

Nor can affidavits or oral testimony as to the guilt or innocence of the accused be received to repel the presumption of guilt arising from the indictment in capital cases, except under special and extraordinary circumstances.

Malice or mistake in the institution of the prosecution are not circumstances sufficient to justify the reception of evidence so as to rebut the presumption created by the indictment, on the application for bail.

What circumstances will be deemed of such a special and extraordinary character as to justify, on the application for bail, the consideration of evidence offered against the presumption of guilt created by the indictment, it is difficult to state in general terms.

Instances of such circumstances given, namely: the existence, at the time the indictment was found, of great popular excitement with reference to the prisoner, or the offense charged against him, likely to bias and warp the judgment of the grand jurors; the existence of the party charged to have been murdered; a clear confession by another of the commission of the offense for which the defendant is indicted.

Bail may sometimes be taken after indictment found in capital cases where no special and extraordinary circumstances exist. As where the public prosecutor admits that the evidence which he can produce will not warrant a conviction for a capital offense, or where he admits facts from which it is evident no such conviction can take place. So where upon trial the evidence for the prosecution and defense has been produced, and the jury have disagreed, or where, after verdict, a new trial has been granted for the insufficiency of the evidence to warrant a conviction. In such cases the Court may allow bail in its discretion, without hearing other evidence as to the guilt or innocence of the accused.

Independently of any consideration of the merits of the prosecution, circumstances frequently arise which will justify the allowance of bail after indictment found. As where the trial of the prisoner is unreasonably delayed, or under the statute of this State, where the trial is postponed from term to term, even upon sufficient reasons. So where any event has happened postponing indefinitely the further prosecution of the action; as the repeal of the statute giving the jurisdiction to try the indictment (where such jurisdiction depends on statute) without provision for its transfer to any other tribunal. So where the law creating the offense charged has been repealed without a reservation of the penalty for past offenses.

This is an application for bail by the defendants, an indictment for the murder of one William Carroll having been found against them by the grand jury of Tuolumne county. The facts of the case are stated in the opinion of the Court.

*L. Quint,* for the Application.

*F. M. Pixley,* Attorney General, *contra.*

FIELD, C. J. delivered the opinion of the Court—COPE, J. concurring.

The defendants were indicted for the murder of William Carroll by the grand jury of Tuolumne county, at the January term of the Court of Sessions of that county, and their application to the County Judge to be admitted to bail was refused.   They now make a similar application to this Court, based upon the papers used and the evidence taken before the County Judge.   The papers are the indictment, which is in the usual form, and one which would sustain a conviction of murder in the first degree, and the bench warrant issued to the Sheriff upon the filing of the indictment.   The evidence consists of the depositions of several witnesses, detailing the circumstances attending the homicide, and which go to show that the offense is less in degree than that for which the defendants are indicted, if not to change the entire character of the act.   The counsel of the defendants offers to produce before us the witnesses examined by the County Judge, if objection be taken to the form in which their evidence is presented, and by stipulation between him and the Attorney General, the application is considered as made upon a return to a writ of *habeas corpus,* issued for the purpose of giving bail under the statute.   The Attorney General resists the application mainly upon two grounds, which, without using his language, may be stated substantially as follows: 1st, that the indictment of itself furnishes so great a presumption of the defendants' guilt as to deprive them of the right to bail; and 2d, that the finding of the grand jury cannot be reviewed on the application, or its effect in creating such a presumption against the defendants be repelled by affidavits or oral testimony as to their guilt or innocence.

1. The Constitution of the State declares that " all persons shall be bailable by sufficient sureties unless for capital offenses, where the proof is evident or the presumption great."   (Art. I, sec. 7.) The Criminal Practice Act, however, provides that " a person charged with an offense may be admitted to bail before conviction,

as follows: 1st, as a matter of discretion in all cases where the punisment is death; 2d, as a matter of right in all other cases; and that " no person shall be admitted to bail when he is charged with an offense punishable with death, when the proof is evident or the presumption great." (Secs. 509 and 510.) The Constitution, as will be thus seen, secures to the citizen accused the right to bail in all cases, except when charged with a capital offense, and even then, unless the proof of guilt is evident, or the presumption of it is great. The statute, on the other hand, renders the admission to bail a matter of discretion, where the punishment is death, unless such evident proof or great presumption exist. In this respect the statute conflicts with the fundamental law. The admission to bail in capital cases, where the proof is evident or the presumption is great, may be made a matter of discretion, and may be forbidden by legislation, but in no other cases. In all other cases, the admission to bail is a right which the accused can claim, and which no Judge or Court can properly refuse.

The inquiry then arises as to the effect of the indictment in creating a presumption of the defendants' guilt. Formerly an indictment was regarded as a mere accusation, which the grand jury ought to find if probable evidence were adduced in its support. " But great authorities," says Chitty, " have taken a more merciful view of the subject, and considering the ignominy, the dangers of perjury, the anxiety of delay, and the misery of a prison, have argued that the grand inquest ought, as far as the evidence before them goes, to be convinced of the guilt of the defendant. What was, therefore, anciently said respecting petit treason, may be applied to all other offenses, that since it is preferred in the absence of the prisoner, it ought to be supported by substantial testimonies." (1 Crim. Law, 318.) The more merciful view of the subject thus referred to is secured by statute in this State. Our Criminal Practice Act declares that the grand jury " shall receive none but legal evidence, and the best evidence in degree, to the exclusion of hearsay or secondary evidence," (Sec. 210) and though not bound to hear evidence for the defendant, " that it is their duty to weigh all the evidence submitted to them, and when they have reason to believe that other evidence within their reach will explain away the

People *v*. Tinder.

charge, they should order such evidence to be produced," (Sec. 211) and that they " ought to find an indictment when all the evidence before them, taken together, is such as in their judgment would, if unexplained or uncontradicted, warrant a conviction by the trial jury," (Sec. 212) and of course ought not to find an indictment when the evidence taken together, if unexplained or uncontradicted, would not warrant such conviction.   The indictment is then something more than a mere accusation based upon probable cause; it is an accusation based upon legal testimony, of a direct and positive character, and is the concurring judgment of at least twelve of the grand jurors, selected to inquire into all public offenses committed or triable within their county, that upon the evidence presented to them the defendant is guilty.*   Such being the case, an indictment for a capital offense does of itself furnish a presumption of the guilt of the defendant too great to entitle him to bail as a matter of right under the Constitution, or as a matter of discretion under the legislation of the State.   It creates a presumption of guilt for all purposes except the trial before a petit jury.   Indeed, if it did not create such presumption, the defendant held under it, or by virtue of the warrant based upon it, without other evidence of his guilt, would be entitled to his discharge absolutely. If it furnished no such presumption it would not justify the exaction of bail or the detention of the defendant.

The authorities concur in sustaining these views.   Thus, in the case of *The State* v. *Mills*, (2 Dev. 421) the Supreme Court of North Carolina says : "After bill found, a defendant is presumed to be guilty to most, if not to all purposes, except that of a fair and impartial trial before a petit jury.   This presumption is so strong that in the case of a capital felony, the party cannot be let to bail." And in *Hight* v. *The United States* (1 Morris, 410) the Supreme Court of Iowa says : "An indictment furnishes no presumption of guilt against a prisoner when he is upon his trial, but so far as it regards all intermediate proceedings between the indictment and trial, it furnishes the very strongest possible presumption of guilt, if the

---

* By the Criminal Practice Act, (Sec. 229) a concurrence of at least twelve of the grand jurors is required before an indictment can be found.—REPORTER.

grand jury is the appropriate organ of the law to decide in the first instance upon the guilt or innocence of the accused, and their finding of a true bill is conclusive so far as to put him upon his trial and to control all the intermediate proceedings.    It is then *functus officio,* and raises no further presumption."

2. The indictment thus creating a great presumption of guilt against the defendants, the important questions arise, whether the finding of the grand jury can be reviewed on the application for bail, or its effect in creating such presumption be replied by affidavits or oral testimony as to their guilt or innocence.

The doctrine of the adjudged cases both in England and the United States is, that in capital cases on the application for bail no inquiry can be had as to the evidence taken before the grand jury, as the deliberations of that body are secret, and the law does not permit the testimony received by them to be disclosed.    Indeed, upon such application the rule in England is to limit the examination as to the defendant's guilt or innocence to the depositions and proofs upon which he was committed.    (1 Chitty's Cr. Law, 129 ; *People* v. *McLeod,* 1 Hill, 394.)    In *Lord Mahun's case* (1 Salk. 104) the Court says :  " If a man be found guilty of murder by the Coroner's inquest, we sometimes bail him, because the Coroner proceeds upon depositions taken in writing which we may look into ; otherwise, if a man be found guilty of murder by a grand jury ; because the Court cannot take notice of their evidence, which they by their oath are bound to conceal."    And Chitty, in his treatise on Criminal Law, says :  "A man charged with murder by the verdict of the Coroner's inquest, may be admitted to bail,   *   *   though not after the finding of an indictment by the grand jury ; the reason of which distinction may be, that in the first case the Courts have the depositions to examine ; whereas, in the latter case the evidence is secret and does not admit of a summary revision."    (1 vol. 130.)    The same view with reference to the evidence upon which an indictment is found, would seem to be followed by the Supreme Court of Louisiana, in the case of *The Territory* v. *Benoit,* (1 Martin, 142.)  The report of that case is very imperfect, but from the opinion we infer that reference on the motion was made to the testimony before the grand jury.    The indictment was for a capital

offense, and the motion was to have the defendant bailed; but the Court said: "It cannot be done; bail is never allowed in offenses punishable by death, when the proof is evident or the presumption great. On a Coroner's inquest finding a person guilty of a capital crime, the Judges have often looked into the testimony, which the Coroner is bound to record, and when they have been of opinion that the jurors had drawn an illogical conclusion, admitted the party to bail. But as the evidence before the grand jury is not written and cannot be disclosed, the same discretion and control cannot be exercised, and the Judges cannot help considering the finding of the grand jury as too great a presumption of the defendant's guilt to bail him. We recollect no case in which it was done."

The statute of this State, in regulating the proceedings before grand juries, makes no provision for the preservation of the testimony which may be taken before them. And though it does not in express terms prohibit the disclosure of the testimony taken, it does so impliedly. It designates the cases in which a grand juror may be required to disclose the testimony of a witness (Sec. 218); and thus in effect declares that such disclosure shall not be required in any other cases. And there are evident reasons of public policy forbidding the disclosure, except in the enumerated cases. The testimony cannot, therefore, be received if offered, and as a consequence, the finding of the grand jury by the indictment cannot be the subject of review upon the application for bail.

Can affidavits or oral testimony as to the guilt or innocence of the defendants be received to repel the presumption arising from the indictment? We are clearly of the opinion that they cannot be received, unless special and extraordinary circumstances exist, and there are no such circumstances shown in the present case. To permit such a procedure in ordinary cases, where no such circumstances exist, would result in rendering the application for bail in the majority of cases, in effect, a trial upon the merits. If such evidence were admissible on the part of the defendant, the public prosecutor could justly claim a right to controvert it; and thus counter affidavits or conflicting oral testimony would be presented, "transforming," as is justly observed by the Supreme Court of New York in *The People* v. *Hyler*, " a motion to bail into an ex-

amination into the guilt or innocence of the prisoner." "The rule," continues the Court in that case, "seems to be well settled to the contrary, and with reason, because to open the whole question of guilt or innocence to proof on a motion to admit to bail, would be attended with most serious inconvenience." (2 Parker's Cr. Rep. 571.)

The rule precluding evidence of the character we have designated, unless special and extraordinary circumstances exist in the case, upon an application for bail after indictment for a capital offense, prevails in the Courts of nearly every State.   It is also the rule of the Federal Courts.   In the case of *The United States* v. *Aaron Burr*, the defendant, having been indicted for treason, applied to be admitted to bail, and in the course of the discussion which followed, inquired "whether the Court would go into testimony extrinsic to the indictment," without stating the existence of any special and extraordinary circumstances for the proceeding, and Mr. Chief Justice Marshall replied : "that he had never known a case similar to the present where such an examination had taken place."   And though the Chief Justice added that he only stated his present impressions, and that the subject was open for argument afterwards, the application for bail was never renewed, as it undoubtedly would have been if Col. Burr or his very able counsel could have supported by authority the admissibility of such extrinsic evidence in that case.   (1 Burr's Trial, 312.)   So in the case of *The United States* v. *Jones et als.* (3 Wash. Cir. Court Rep. 224) the defendants were indicted for piracy, and a motion to admit them to bail having been made, counsel proposed, with reference to one of them, to go into the evidence against him, but the Court said : "The bill of indictment being found, we do not feel ourselves at liberty to inquire into the evidence against him."

The cases in which this rule has been departed from have only arisen, so far as we have been able to make an examination, in the Courts of Texas, Indiana and South Carolina.   In Texas, previous to her annexation to the Union, it was held, in the case of *The Republic* v. *Wingate*, that after an indictment for murder the prisoner was entitled to an examination of the witnesses as to his guilt or

innocence upon an application for bail.   We have not been able to find any report of this case, and standing by itself it is not entitled to much consideration against the general current of adjudications opposed to its conclusions.   The cases decided in that State since her annexation are not authority, as the matter is now determined by a provision in her Constitution.   The ninth section of her Bill of Rights declares, that "all prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident or the presumption great ; *but this provision shall not be so construed as to prohibit bail after indictment found,* upon an examination of the evidence by a Judge of the Supreme or District Court, upon the return of the writ of *habeas corpus,* returnable in the county where the offense is committed."   (See *Yarbrough* v. *The State,* 2 Tex. 523.)

In Indiana the Supreme Court held that the statute of the State authorized, on application for bail, an examination of witnesses and a full investigation of the case.   The Court also held that, as under an indictment for murder in the first degree the accused might be convicted of murder in the first or in the second degree, or manslaughter, it should not be taken as conclusive of the grade of offense in determining the question of bail.   (*Lumn* v. *The State,* 3 Ind. 294.)   As to the first ground, it is sufficient to say that we have no such statute in this State ; and as to the second ground, it does not strike us as possessing any force.   Though it is true, under an indictment for murder in the first degree the accused may be convicted of a less offense, the grand jury have no right to present, and we are not to presume that they have presented, an indictment of that character, unless the evidence before them, unexplained or uncontradicted, would warrant in their judgment a conviction of the offense in that degree.   The indictment is their finding that of the offense designated, in its character and degree, the defendant is guilty.   And we agree with Mr. Justice Sutherland, in *Ex parte Tayloe,* (5 Cow. 56) " that an indictment must be taken as conclusive upon the degree of the crime " on the application for bail.

In South Carolina, in the case of *The State* v. *Hill,* (1 Const. Court R. 242) where the defendant was under indictment for a capital

offense, it was held that affidavits tending to show that the prosecution was instituted from malice or mistake, and that the inveigling of the slave from his master, which constituted the offense charged, was not felonious or fraudulent; but in consequence of a fair claim of property, should be received and considered on the application of the defendant to be admitted to bail. This decision was made by a divided Court, and though supported to some extent by the action of the King's Bench in *Mrs. Barney's case* (5 Mod. 323) is, like the decision cited from the Supreme Court of Texas, entitled to little weight against the general current of the authorities. And it is not easy to uphold it by any solid reasons. It is difficult to perceive how malice in the institution of the prosecution can affect the case. The accused is not entitled to any more leniency or consideration because improper motives may have led to the exposure of his crime and to proceedings against him. The malice on the part of the complainant is not likely to be infused into the public prosecutor or the grand jurors, so as to affect and control the conduct of the prosecution or the finding of the indictment. Where a mistake in the institution of the prosecution is alleged, the proper course is to make a representation of the matter to the public prosecutor, who will undoubtedly consent to the reception of bail, if satisfied of the truth of the representation. On the other hand, if the allegation be controverted, evidence as to the matter is evidence as to the guilt or innocence of the accused, which cannot be heard on an application for bail for the reasons we have already stated, except where there are special and extraordinary circumstances. But if malice or mistake in the institution of a prosecution did constitute a circumstance sufficiently great to justify a departure from the ordinary rule, it would not help the defendants in the present case. Here no such malice or mistake is alleged.

What circumstances will be deemed of a special and extraordinary character, so as to justify, on the application for bail, the consideration of evidence offered against the presumption of guilt created by the indictment, it may be difficult to designate in general terms. It will suffice for the illustration of the views we entertain on this subject to mention some instances of the kind. The existence, at the time the indictment was found, of great popular

excitement with reference to the prisoner, or the offense charged against him, likely to bias and warp the judgment of the grand jurors, would constitute such special and extraordinary circumstance.   On this ground the admission of testimony by a former Chief Justice of this Court, in favor of Robinson, indicted for murder alleged to have been committed during the riots of 1850 at Sacramento, on his application for bail, may be justified.   Strong feeling, it is said, was manifested against him by some of the grand jurors by whom he was indicted.   And whilst the indictment was still pending, he was elected a member of the Legislature by the citizens of the county.   The existence of the party charged to have been murdered would constitute an extraordinary circumstance in any case; and the allegation under oath of his existence in the application for bail would justify, if not require a careful examination of the evidence offered.   So, too, would a clear confession by another of the commission of the offense for which the defendant is indicted.

Bail may also be taken after indictment found, where no such special and extraordinary circumstances exist as we have mentioned.   Thus it may be taken upon the admission of the public prosecutor that the evidence which he can produce will not warrant a conviction of a capital offense, or upon his admission of facts from which it is evident no such conviction can take place.   So bail may be taken where upon trial the evidence for the prosecution and defense has been produced, and there has been a disagreement among the jurors, or where after verdict a new trial has been granted for the insufficiency of the evidence to warrant a conviction.   Cases of this kind justify the allowance of bail in the discretion of the Court, without hearing other evidence as to the guilt or innocence of the accused.

And independently of any consideration of the merits of the prosecution, circumstances frequently arise which will justify the allowance of bail after indictment found.   Thus bail may be allowed if the trial of the prisoner has been unreasonably delayed.   And under our statute, if the trial be postponed, even upon sufficient reasons, from term to term, the Court may discharge the defendant on his own recognizance or on bail.   (Crim. Prac. Act, secs. 594,

People *v.* Tinder.

595) * So also bail may be allowed where any event has happened postponing indefinitely the further prosecution of the action, as the repeal of the statute giving the jurisdiction of the Court to try the indictment, (where such jurisdiction depends upon statute) without provision for its transfer to any other tribunal. So also where the law creating the offense charged has been repealed without a reservation of the penalty for past offenses.†

Other cases might be enumerated where bail, after indictment for a capital offense, may be properly asked and allowed. Those to which we have referred are of the most frequent occurrence. In the present case there are no special and extraordinary circumstances stated which would justify us in listening to the evidence offered. The affidavits only show that strong rebutting testimony against the prosecution may be presented to the trial jury, and this by itself, disconnected from the circumstances we have designated, cannot be received against the indictment on this application.

Application for bail denied.

---

* The following are sections five hundred and ninety-four and five hundred and ninety-five of the Criminal Practice Act of this State :

" Sec. 594. If a defendant indicted for a public offense, whose trial has not been postponed upon his application, be not brought to trial at the next term of the Court at which the indictment is triable, after the same is found, the Court shall order the indictment to be dismissed, unless good cause to the contrary be shown.

" Sec. 595. If the defendant be not indicted or tried, as provided in the last two sections, and sufficient reasons therefor be shown, the Court may order the action to be continued from term to term, and in the meantime may discharge the defendant from custody on his own recognizance, or on the recognizance of bail, for his appearance to answer the charge at the time to which the action is continued.''

† By a general statute of this State, passed May 17th, 1853, it is provided " that the repeal of any law creating a criminal offense shall not be held to constitute a bar to the indictment and punishment of a crime already committed, in violation of the law so repealed, unless the intention to bar such indictment and punishment is expressly declared in the repealing act." (See *People* v. *Barbour*, 9 Cal. 230, and *People* v. *Quinn*, 18 Id. 122.)