EX PARTE D. M. EZELL AND JOHN IVEY.

1. The 9th Section of the Bill of Rights secures the right of bail only to those prisoners who have not been tried and convicted in the District Court.

2. When the application for the writ of *habeas corpus* shows that the applicant is restrained of his liberty by a sheriff acting under a commitment issued by the District Court after trial and judgment of conviction for a felony, the writ will not be awarded.

D. M. Ezell and John Ivey were, at the February term, 1874, of the Travis District Court, tried and found guilty of a felony, and their punishment assessed at imprisonment in the penitentiary. Final judgment of conviction was rendered against them, and they were committed to jail. Their application for bail, made after conviction, being refused by the district judge, they applied to this court for a writ of *habeas corpus*, and in their application set forth the above facts.

*D. E. Thomas*, for relators.—This application is made in the face of the statute which provides, that "when the defendant appeals in any case, of felony, he shall be committed to jail until the decision of the Supreme Court can be made." (See Paschal's Digest, Article 3185.)

This statute, we insist, is in direct conflict with that provision of the Constitution of the State which provides that "All prisoners shall be bailable on sufficient sureties, unless for capital offenses when the proof is evident." (Constitution, Art. 1, Sec. 9.)

To determine this question it would be well to inquire, what was the object of the above provision of the Constitution? Was it to enlarge or abridge the rights of a prisoner, as known and recognized by the provisions of the common law? It was certainly to enlarge his right to bail, and not to abridge that right.

The right and power of the Court of King's Bench in England to grant bail after conviction cannot be denied. It is a matter resting in the sound discretion of the court. (Bishop on Criminal Procedure, Vol. 1, Secs. 698, 699 ; Bacon Abr., Vol. 1, 483, 493; 2 Hawk. P. C., 170 ; 3 East, 163 ; 5 Tenn., 169 ; 1 Chitty Cr. Law, 2 Ed., 98, 99.)

The Constitution of Mississippi provides that "All prisoners before conviction are bailable by sufficient securities, except for capital offenses where the proof is evident or presumption great ;" yet they hold in that State that the circuit courts possess and may exercise the power of bailing after conviction in cases not capital whenever a sound discretion will warrant it. (*Ex parte* Dyson, 25 Miss., 358 ; 6 Howard, Miss. R., 399; Davis v. The State, and authorities cited in the above cases ; see also Corbit v. The State, 24 Ga., 391 ; People v. Johnson, 2 Barbour, N. Y., 450 ; Tennessee Code, Constitution and Laws, 3 Caldwell, 96.)

Wherever bail was a matter of discretion with the court at common law, it becomes a matter of right under our Constitution, and the Legislature has no power to deprive a prisoner of that right.

If the petitioners are not convicts they are prisoners, and certainly come within the purview of the Constitution. They are not convicts as defined by our statute.

"An accused person is termed a convict after final condemnation by the highest court of resort which by law has jurisdiction of his case, and to which he may have thought proper to appeal." (Paschal's Digest, Article 1628.)

From the above definition as given by our law, the petitioners are not convicts. They have not been finally condemned by the court of last resort in which their cause is now pending. But prisoners in contemplation of law, and therefore entitled to bail. (Louisiana Annual Reports, Vol. 3, page 10, point expressly decided.)

No sentence has or can be pronounced. But sentence is stayed by operation of law to await final adjudication in the Supreme Court.

The constitutionality of the above law has never been decided by the Supreme Court of this State.

The case of Brill v. The State, 13 Texas, 79, is no authority against the position we assume; the constitutionality of the law was not raised in that case.

We regard the question presented a serious one, involving the liberty of the citizen; we therefore ask the serious and deliberate consideration of the court to all the authorities upon the point before bail is denied to the petitioners in this cause.

*Terrell & Walker*, also for relators.

*Geo. Clark*, *Attorney-General*, for the State.

ROBERTS, CHIEF JUSTICE.—The Code of Criminal Procedure provides, that "when the defendant appeals in any case of felony, he shall be committed to jail until the decision of the Supreme Court can be made."

The applicants having been convicted of a felony in the District Court and taken an appeal to this court, contend that they are entitled to bail in contravention to the law, because it is in conflict with that part of our Bill of Rights in the Constitution which says that "all prisoners shall be bailable upon sufficient sureties, unless for capital offenses when the proof is evident; but this provision shall not be so construed as to prohibit bail after indictment found, upon an examination of the evidence by a judge of the Supreme or District Court, upon the return of the writ of *habeas corpus*, returnable in the county where the offense is committed."

After a full consideration of the subject, we are not prepared to say that the Legislature has not the power to pass such a law. Although the terms "all prisoners"

are used, it is evident that it was not meant to require all prisoners under all circumstances to be bailed, but must refer to a class of prisoners, each and all of whom shall be bailed except as therein provided. There are several considerations leading pertinently to the conclusion that prisoners before trial and conviction in the District Court were those alone who were designed to be secured this absolute constitutional right of bail.

The District Court is the tribunal provided by the Constitution for the trial and conviction of persons charged with offenses amounting to felonies. The same instrument secures them the right of appeal from the judgment of conviction to the Supreme Court. That appeal, however, does not bring the party before this court for a trial *de novo;* it merely suspends the judgment of the court below until this court can revise and pass judgment upon the correctness of the proceedings of the District Court in the trial of the cause.

This appeal for revision is a discretionary privilege, of which the party convicted can avail himself or not, as he pleases.

The Constitution secures to him this privilege, but does not prescribe the mode or manner of obtaining it. By a necessary implication, the duty is cast upon the Legislature of making such regulations in securing this appellate revision of his conviction as will reasonably attain the object for his benefit, and at the same time secure a reasonable certainty of his punishment, in the event his conviction shall be pronounced by the appellate court, upon revision thereof, to have been correct. These regulations properly embrace not only the various steps to be taken in presenting the subject matter of revision to this court, but also the security of his person to abide the decision.

The Legislature, therefore, is under an obligation to the party and to the public, in the discharge of which the

rights of both must be practically subserved. If the party should be bailed after conviction, punishment in the penitentiary would simply have its price, regulated generally by the amount of the recognizance, where one could be given at all. And if the amount should be increased so as to secure the appearance, it would most likely either prevent the giving of the bail, or would infringe upon another constitutional right which is covered by the expression that "excessive bail shall not be required."

It is not clear, then, that this is not a necessary and proper regulation in securing this right of appeal to a party convicted of a felony.

Another consideration arises out of the time and circumstances under which this law was enacted, and the long continued tacit recognition of its propriety in forming constitutions during its existence and enforcement.

It was adopted as a part of our codes, in adapting our criminal laws to the penitentiary system. The Constitution of 1845, then in force, contained this same clause in the Bill of Rights in reference to the right of bail, and it provided also for the right of appeal in criminal cases, "with such exceptions and under such regulations as the Legislature shall make."

These two provisions construed together made it reasonably certain that the Legislature had the power to pass this law, refusing bail to such prisoners after conviction.

In the constitutions of 1861 and of 1866 there was no material change in either of the provisions relating to the matter now under consideration. The Constitution of 1869 contains the same clause in the Bill of Rights as to the right of bail, and a provision that "in criminal cases no appeal shall be allowed to the Supreme Court, unless some judge thereof shall, upon inspecting the transcript of the record, believe that some error of law has been committed by the judge before whom the cause

was tried; *provided*, that said transcript of the record shall be presented within sixty days from the date of the trial, under such rules and regulations as may be prescribed by the Legislature.''

This important change in imposing onerous restrictions and limitations upon the right of appeal shows that the subject was considered by the convention, and that instead of enlarging the rights of the prisoner convicted, as they had previously existed, they sought rather to diminish them.

By the late amendments of the Constitution it is provided, that ''the Supreme Court shall have appellate jurisdiction only, which in civil causes and criminal causes shall be coextensive with the limits of the State.'' The main object of this change was to get rid of the limitations and restrictions on the right of appeal in regard to obtaining the leave of one of the judges of the Supreme Court, and had no reference to enlarging the rights of the prisoner as to bail after conviction; nor does it in effect, by omitting to expressly give the Legislature the right to regulate the remedy by appeal, take away or destroy the implied obligation to make such regulations by law as may be necessary and proper to secure that remedy to the prisoner which has been done by the laws now in force. These provide for the manner in which the case shall be prepared and sent to this court; that the transcript may be sent to either of the places where the court is being held, and that it may be given a preference as to time of hearing on the docket, by which the prisoner is furnished speedy revision of his case, while he awaits in jail the decision of its correctness, as sought by him.

The fact that this law denying bail to the prisoner convicted of a felony while his appeal is pending has been in force ever since the first day of February, 1857, and has not been altered by the Legislature during the many sessions since held, and has not been changed by the sev-

eral conventions, whose members were perfectly familiar with its enforcement all over the State. That neither the bar nor bench have ever before this time called in question its constitutionality, though not conclusive, is a forcible argument in favor of the power of the Legislature to make such a law.

The decisions upon this question have been different in different States. In the State of North Carolina, it was held by the Supreme Court that the clause in their Bill of Rights, similar to that in ours, did not confer the absolute right of bail to prisoners after conviction, and pending a writ of error to the Supreme Court. In that case the judge delivering the opinion (in which the court was unanimous) says: "I think that clause in the Constitution which declares that all prisoners shall be bailable by sufficient securities, unless for capital offenses when the proof is evident or the presumption great, relates entirely to prisoners before conviction; for although the words, where the proof is evident or the presumption great, relate to capital cases only—that is to prisoners in capital cases—the meaning is evidently prisoners before conviction; for after conviction there is no such thing as proof and presumption," etc. That decision was made in a case of felony less than capital, and the exception having reference to the proof upon which a prisoner is bailable is alluded to as indicating the class of prisoners to which the whole clause is applicable, whether the prisoners be charged with capital or less felonies.

Our Bill of Rights refers to another matter that must be understood to be before conviction, by explaining that this clause was not intended to prohibit bail after indictment found. That authoritative explanation was first placed in the Constitution of 1845, and was superinduced by the difference of opinion previously entertained as to the right of bail in a capital case even after indictment found, which had been settled by a then late decision

of the Supreme Court of the Republic of Texas. (2 Hawk. L. and E. R., 447; Yarbrough v. The State, 2 Texas, 523.)

In the State of Louisiana, where there is a similar provision in their Bill of Rights, and a statute the same as ours requiring the imprisonment of the person convicted of a felony during the pendency of the appeal, the Supreme Court decided the law to be unconstitutional. (See case of Longworth, 7 La., 24, in 1852.) The court manifests great reluctance in doing so, after an elaborate discussion (one member of the court dissenting to it), and suggest the probability of an amendment of the Constitution in that respect so as to take away the right of bail after imprisonment, which was shortly afterwards done by inserting in said clause the exception, "unless after conviction for any offense or crime punishable with death or imprisonment at hard labor. (See La. Con. of 1852, Amer. Cons., 351.)

Our Supreme Court has acted upon cases involving the enforcement of this law, but not, that we are aware of, wherein the question was presented and argued as to its constitutionality, and therefore such cases would only be authority to the extent of acquiescence.

Another consideration favorable to the construction that the class of prisoners before conviction is secured the right of bail by this clause in the Bill of Rights is deducible from its origin and history. It was inserted in the Constitution of the Republic of Texas of 1836. (Oldham & White's Digest, 42.) The principle asserted by it, as well as many others in the Bill of Rights then adopted, was not of Spanish or Mexican origin, but was imported into Texas with the Anglo-American population, who had, in their first assumption of sovereign power in the provisional government of 1835, recurred to the "principles of the common law of England" for the protection of personal rights. (Oldham & White's

Digest, 19.) ·The constitutions of a few of the States
containing this clause qualify it by the expression "be-
fore conviction."

The constitutions of Arkansas, Missouri,. Kentucky,
Florida, Ohio, Tennessee, Pennsylvania (in 1838) and
Rhode Island (1842) contain a similar clause, and from
the exact similarity of the language used it may be pre-
sumed that they were copied from the Constitution of
North Carolina, adopted in 1776 (or other State consti-
tutions of the same period), which is as follows: "All
prisoners shall be bailable by sufficient sureties, unless
for capital offenses when the proof is evident or the pre-
sumption great." (American Constitutions, 242; Hurd
on *Habeas Corpus*, 431–2–3–4.)

·  In all of the first constitutions of the several American
States many provisions for the protection of personal
rights and liberties were inserted, most of which related
to freedom from illegal restraint and the insurance of a
speedy and impartial trial for alleged offenses. They·
were for the most part extracted from the *Magna Charta*,
Bill of Rights, and *habeas corpus* act of England, and
extended to embrace still other principles which, though
advocated by the friends of freedom, had not become a·
part of the British Constitution.

If we look back through the long struggle against the·
tyranny and oppressions by which these great rights
were secured, it will be found that the grievances com-
plained of related to the treatment of prisoners before
trial and conviction, and not after. (Hurd on *Habeas*·
*Corpus*, 78, 90, 92; Hallam's Constitutional History, 140.)·

It is not believed that it was ever a matter of great com-
plaint that the granting of a writ of error to revise a judg-
ment of conviction was only by the consent of the king's
counsel, and that during its pendency the defendant was·
never bailed in convictions of felony, except as matter of
favor in such cases as the judges were satisfied should

not be sustained or enforced on account of some defect in law or fact. (Hurd on Corporations, 446, 430–31; Fisher's Digest Criminal Law, "Error and Appeal," 592.) The Court of King's Bench had the right to bail after, as well as before, conviction. Concerning its exercise Hawkins uses the following strong language: "Bail is only proper where it stands indifferent whether the party be guilty or innocent of the accusation against him, as it often does before his trial; but where that indifference is removed, it would, generally speaking, be absurd to bail him." (Hurd on *Habeas Corpus*, 430–31.)

Thus it would seem most likely that the prisoners to whom were intended to be secured the absolute right of bail were those charged with offenses before trial and conviction.

In this case the facts upon which the applicants rely for bail, under the writ of *habeas corpus* applied for to this court, fully appearing upon the written application, and the court not being satisfied that they are sufficient, the application is refused to be granted.

APPLICATION REFUSED.