

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

*Ace C 367*
*C -696*

**WILL WILSON**
**ATTORNEY GENERAL**

January 24, 1961

Mr. Jack Ross, Administrator
Interstate Parole Compact
Board of Pardons and Paroles
Austin, Texas

Opinion No. WW-989

Re: Questions relative to the
construction of Article 781c,
Code of Criminal Procedure

Dear Mr. Ross:

Your request for an opinion has been received and carefully considered by this office. We quote your letter, in part, as follows:

"In order to clarify the procedures relating to Section 2, paragraph (3) of Article 781c, Code of Criminal Procedure, known as the Uniform Act for Out of State Parolee Supervision, your opinions on the following questions are respectfully requested. It should be noted that all states have adopted this Uniform Act.

"1) When the parole or probation of a person, who is being supervised in the State of Texas for another state, is revoked by the other state, may that state send its agents into the State of Texas and upon proper identification re-take physical custody of the parolee or probationer and return him to the sending state without extradition proceedings and without reference as to whether the person has signed a waiver of extradition in the State of Texas?

"2) When a parolee or probationer is being supervised in one state for another state, neither being the State of Texas, and such person absconds to the State of Texas and his parole or probation is revoked, may the state of original jurisdiction take him in custody in Texas and return him to its jurisdiction without extradition proceedings under Article 781c, C. C. P.?

"3) Can a person be admitted to bail in Texas when he is on parole or probation from another state and when his parole or probation has been revoked and when the sending

state is in the process of returning him to its
jurisdiction?

"4)   When authorized and directed by the sending
state, may a parolee or probationer from such state,
who is being supervised in the State of Texas, be
held in custody upon the order of the Administrator
of the Compact for the State of Texas until a revo-
cation warrant can be obtained from the sending state?"

Section 2, paragraph (3) of Article 781c, Code of Criminal Procedure,
states:

"(3)   That duly accredited officers of a sending state
may at all times enter a receiving state and there apprehend
and retake any person on probation or parole.  For that purpose
no formalities will be required other than establishing the
authority of the officer and the identity of the person to be
retaken.  All legal requirements to obtain extradition of
fugitives from justice are hereby expressly waived on the part
of States party hereto, as to such persons.  The decision of
the sending state to retake a person on probation or parole
shall be conclusive upon and not reviewable within the receiv-
ing state; provided, however, that if at the time when a state
seeks to retake a probationer or parolee there should be pend-
ing against him within the receiving state any criminal charge,
or he should be suspected of having committed within such state
a criminal offense, he shall not be retaken without the consent
of the receiving state until discharged from prosecution or from
imprisonment for such offense."

To answer your first question, when the parole or probation of a person
who is being supervised in the State of Texas for another state, is revoked by
the other state, that state may send its agents into the State of Texas and upon
proper identification may take physical custody of the parolee or probationer
and return him to the sending state without extradition proceedings and without
reference to whether the person has signed a waiver of extradition in the State
of Texas.  In State of Alabama ex rel Bridges v. Waters, 108 So.2d 23 146 (Ala.
S.Ct. 1959) the Alabama Supreme Court held that the receiving state could not
inquire into the sending state's reasons for revoking parole.  In Woods v. State,
87 So.2d 633 (Ala. S.Ct. 1956) the Alabama Supreme Court upheld the constitution-
ality of the Compact against a claim that it violated the due process clause of
the Constitution.  In the case of Gulley, Sheriff v. Apple, 210 S.W.2d 514 (Ark.
1948) the Arkansas Supreme Court held that the Interstate Parole Compact did not
violate the right of habeas corpus, and also stated that federal extradition
procedure was not intended to prevent states from making other arrangements for

extradition.  The leading case on the Compact is Ex parte Tenner, 128 P.2d 338
(Cal. S.Ct. 1942) cert. denied 314 U.S. 585, 317 U.S. 597.  This case covered
almost all aspects of the Compact's constitutionality.  The United States
Supreme Court refused to review the favorable decision of the California Supreme
Court.

The only Texas case touching on the Uniform Act for Out of State Parolee
Supervision is Ex parte Margaret Ann Smith, 339 S.W.2d 671 (Tex.Crim. 1960).  In
denying an application for habeas corpus, the Court stated in part:

"The Governor of Texas has executed the compact as authorized
and directed by the Legislature, and the State of Ohio is a party
to the compact.

"The Congress of the United States has consented to any two
or more states entering into such a compact. 4 U. S. C. A., Sec.
111.

"The statute authorizing and directing the Governor of Texas
to execute the compact on behalf of this State is attacked as uncon-
stitutional, the ground being that because of the use of the word
'substantially' the statute is a delegation of legislative authority
to the executive branch of government.

"No authority is cited in support of such contention and we
know of none.

"'Substantially', as used in this statute, we understand
means all that is necessary or essential.  The statute in effect
requires that the compact to be executed by the Governor embody
the substance of the form set out therein, but does not require
that it be in the exact words set out in the statute.

"There is no suggestion that the compact executed varies in
any material manner from the language of the statute."

Ex parte Tenner, supra, reads in part:

"The Compact represents the social policy of both California
and Washington in this regard.  It is a uniform agreement for coop-
erative effort and mutual assistance in the prevention of crime and
in the enforcement of the criminal laws of each state within the con-
templation of the federal legislation and therefore does not violate
the prohibition of the Constitution concerning compacts between states.
. . . The existence of an independent method of securing the return
of out-of-state parolees does not conflict with nor render ineffectual
the federal laws with relation to extradition. . . . And since the

statute applies uniformly to all parolees from states party
to the compact, the petitioner may not complain that the
statute deprives him of the equal protection of the laws."

In answer to the second question, it is our opinion that when a parolee
or probationer is being supervised in one state for another state, neither
being the State of Texas and such person absconds to the State of Texas and his
parole or probation is revoked, the state of original jurisdiction may take him
into custody in Texas and return him to its jurisdiction without extradition
proceedings under Article 781c, Code of Criminal Procedure.  In a 1955 case
before the New York Supreme Court, People ex rel Marro v. Ruthazer, 140 N.Y.S.2d
571, the court when faced with such a problem declared only that all three
states were members of the Compact and the sending state could take him back.
In re Severa, a 1953 North Carolina Superior Court case, the court held that
although North Carolina was not the receiving state to which Severa had been
sent under the Compact, Severa had agreed in his waiver not to contest any effort
"by any state", to return him to New Jersey, and that New Jersey might retake him
without extradition.  In a 1955 opinion, the Wyoming Attorney General allowed
this procedure as did the Idaho Attorney General in a 1956 opinion.

For your third question, you asked whether a person may be admitted to
bail in Texas when he is on parole or probation from another state, when his
parole or probation has been revoked, and when the sending state is in the pro-
cess of returning him to its jurisdiction.  The Attorney General of North Carolina
is the only official to deal directly with this problem.  In an opinion dated
November 7, 1959, that office stated that out-of-state parolees under supervision
in North Carolina may be arrested upon issuance of a temporary revocation warrant
by the North Carolina Compact Administrator.  Such parolees are not entitled to
bail when they are being held in custody pending the sending state's decision as
to their return.  Bail in such situations was not contemplated by the statute.
Article 1, Section 11 of the Constitution of the State of Texas provides in part:

"All prisoners shall be bailable by sufficient sureties,
unless for capital offenses, when the proof is evident."

However, this section has been held to secure the right of bail only to those
prisoners who have not been tried and convicted.  Ex parte McBride, 2 S.W.2d
267 (Tex.Crim. 1928), held that Section 11 of Article 1 of the Texas Constitu-
tion has reference to prisoners before conviction.  Prisoners after conviction
were held not to be guaranteed the right of bail.  Other Texas cases holding
this are Ex parte Ezell, 40 Tex. 451; Ex parte Schwartz, 2 Tex.App. 74; Warnock
v. State, 6 Tex.App. 450; Ex parte McCorkle, 29 Tex.App. 20.  In our situation
these parolees or probationers have all been tried and convicted and there is
no authority for admitting to bail such parolees or probationers.

Section 2, paragraph (2) of Article 781c, Code of Criminal Procedure,
known as the Uniform Act for Out-of-State Parolee Supervision, reads as follows:

"(2)  That each receiving state will assume the duties of visitation of and supervision over probationers or parolees of any sending state and in the exercise of those duties will be governed by the same standards that prevail for its own probationers and parolees."

Then, Section 21 of Article 781d, Code of Criminal Procedure, known as the Adult Probation and Parole Law of 1957, reads:

"Upon order by the Governor, the Board is authorized to issue a warrant for the return of any paroled prisoner to the institution from which he was paroled.  Such warrant shall authorize all officers named therein to return such paroled prisoner to actual custody in the penal institution from which he was paroled.  Pending hearing, as hereinafter provided, upon any charge of parole violation, the prisoner shall remain incarcerated in such institution.

". . ."

Construing the above sections of these two acts together, it seems apparent that bail in the cases of out-of-state parolees or probationers being supervised in Texas is not to be permitted.

In answering your fourth question, when authorized and directed by the sending state, a parolee or probationer from such state who is being supervised in the State of Texas may be held in custody upon the order of the Administrator of the Compact for the State of Texas until a revocation warrant can be obtained from the sending state.  In State of Alabama ex rel. Bridges v. Waters, supra, the Alabama Supreme Court held that the Compact authorized apprehension of parolees by officers of the sending state, but did not prevent their apprehension by officers of the receiving state.  In Stone v. Robinson, 219 Miss. 456, 69 So. 2d 206 (Miss. S.Ct. 1954) the Mississippi Supreme Court held that Stone could be retaken without having his parole revoked, that Louisiana's certificate and warrant were admissable in evidence and that Mississippi's arrest warrant (the receiving state's) was authorized by the Compact.  The Attorneys General of Arkansas (1957) and North Carolina (1959) have both declared that out-of-state parolees under supervision in the receiving state may be arrested upon issuance of a temporary revocation warrant by the Compact Administrator of the receiving state, or arrested and detained temporarily without a warrant upon parole violation.

## SUMMARY

1.  When the parole or probation of a person who is being supervised in the State of Texas for another state is revoked by the other state, that state may send its agents into the State of Texas and upon proper identification retake physical custody of the parolee or probationer and return him to the sending state without extradition proceedings

and without reference to whether the person has signed a waiver of extradition in the State of Texas.

2.   When a parolee or probationer is being supervised in one state for another state, neither being the State of Texas, and such person absconds to the State of Texas and his parole or probation is revoked, the state of original jurisdiction may take him into custody in Texas and return him to its jurisdiction, without extradition proceedings, under Article 781c, Texas Code of Criminal Procedure.

3.   A person is not to be admitted to bail in Texas when he is on parole or probation from another state, when his parole or probation has been revoked, and when the sending state is in the process of returning him to its jurisdiction.

4.   When authorized and directed by the sending state, a parolee or probationer from another state who is being supervised in the State of Texas may be held in custody upon the order of the Administrator of the Compact for the State of Texas until a revocation warrant can be obtained from the sending state.

Yours very truly,

WILL WILSON
Attorney General of Texas

By *Glenn R. Brown*

GLENN R. BROWN
Assistant

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Joe McMasters
L. P. Lollar
Virgil Pulliam
Mary K. Wall

REVIEWED FOR THE ATTORNEY GENERAL
BY:  Houghton Brownlee, Jr.