No. 11,764.

STATE OF LOUISIANA EX REL. DICK VICKERS, PRAYING FOR A WRIT OF HABEAS CORPUS.

On the trial of an application of a party indicted for murder to be released on bail, there is no necessity, unless he asks that he be brought before the court, for the accused to be personally present, as the legality of his detention is not called in question. The sheriff as an officer is not legally concerned whether the application for bail be granted or not. The District Attorney of the district in which the criminal charge is pending is the proper person with whom such an application should be contradictorily disposed of, and it is proper that the District Judge, if he has taken previous action in the matter, be notified of it.

A mistrial because of a disagreement of a jury as to a capital offence does not furnish the accused the absolute right to give bail. That fact, coupled with other circumstances, simply affords proper matter for the court to consider in exercising its discretion as to whether or not it will admit to bail.

Bail is frequently allowed from considerations independent of the merits of the prosecution, as, for instance, the dangerous illness of the accused, or long delay in bringing his case to trial. Such cases are addressed to the sound discretion of the court, and the conduct of the prisoner after his indictment enters as a factor into their determination.

Where the record brought up shows that a mistrial in a capital case was followed by an application by the accused for bail—that the application was granted, but that instead of furnishing bond the pa ty escaped—that thereupon the order was revoked by the District Judge. That subsequently, the prisoner being in confinement, his case was called for trial, but over his objection it was continued for five months; that he made a second application for bail to the District Court, which was refused (the court refusing to hear testimony), and he then applied to the Supreme Court for relief—that court refused the writ—there being no attempt to establish before it that the return of the accused to imprisonment was through his voluntary act, and there being nothing before it which was not before the District Court upon the second application. That the accused had, after escaping, voluntarily surrendered himself, is not established by a proffer before the District Court to prove that fact, and a refusal by the District Judge to hear testimony upon the subject brought before it: The facts connected with his return are merely asserted, and not attempted to be shown to the Supreme Court by evidence. The bill of exception taken in the District Court does not, *per se*, establish the facts referred to.

*J. C. Pugh* and *Goss & Parsons* for Petitioner.

*M. J. Cunningham*, Attorney General, and *J. B. Lee*, District Attorney, for Respondents.

Argued and submitted March 20, 1895.
Opinion read April 8, 1895.

Relator alleges that on the 25th January, 1894, he was indicted by the grand jury of De Soto parish, charged with the murder of one Cherose; that on the 17th of February, 1894, he was tried by a jury, which was unable to agree, and a mistrial was ordered by the trial judge. That on February 11, 1895, he, through his counsel, demanded a trial, when, on motion and affidavit of the District Attorney, his case was continued to the August term of court. That after a continuance of his case, as aforesaid, he applied to the presiding judge for bail, which application the said judge refused to hear or entertain, whereby he has been deprived of his constitutional right to bail, a right guaranteed him by the Constitution of the State. That in his case the proof is not evident, nor the presumption great, all of which would appear by reference to the transcript which he annexed to his petition. That the presiding judge, who refused to hear his application for bail, in a written opinion on file and of record, and which he annexed to his petition in said cause, said: "The question was whether, believing with the jury that it was not a proper case for the infliction of the death penalty, I should, because I had it in my power to do so, and because he was unable to give bond, allow him to lie there and die, and thereby inflict the death penalty through the machinery of the law without a conviction and in a case to which neither I nor the jury thought the death penalty should be applied."

The record sent up shows that relator was indicted for murder on the 24th January, 1894, and that on *February 27, 1894, a mistrial* in his case was entered, the jury before which he was tried not being able to agree. That on the *27th February, 1894*, his release from imprisonment was ordered, conditioned on his giving bond for two thousand dollars. That on the 24th of September, 1894, this order was revoked, the judge's order for revocation stating "this order for

bond is hereby revoked, the defendant having escaped and shown a disposition to avoid a trial." That on *January 28, 1895*, the case was fixed for trial for February 4, 1895, but this *order was set aside* on the next day. That on the 11th February, 1895, the accused, through his counsel, asked that it be again fixed, but that the District Attorney, objecting and filing a motion for a continuance, supported by affidavit, the case was continued to the next term of court. That the accused then applied to be released on bail, which the court refused. That he then proposed to offer certain testimony and evidence in support of the application, but the District Attorney objecting, the judge refused to receive the evidence, and that to the rulings of the District Judge counsel of accused took a bill of exception.

In his affidavit for a continuance the District Attorney declared that the State could not go safely to trial, in consequence of two important witnesses for the prosecution, after having been subpœnaed, having absented themselves from the State without his knowledge; that these parties had testified at the coroner's inquest, and the importance of their testimony would appear from a copy of the same annexed to the motion for continuance. That he had been informed that these witnesses were absent through the procurement, consent and aid of the accused.

In the first bill of exception taken by relator it is recited that the defendant, in open court, making an application for bail, proposed to show and establish that after his alleged escape he voluntarily surrendered and offered to tender evidence to show that he had nothing to do with the leaving of certain State witnesses referred to in the application for continuance by the State, and that he offered to introduce on trial of said application the written opinion of the trial judge as published in the *Democrat Journal* of date Friday, June the 8th, 1894, which opinion or article was annexed to the bill, and offered to show that the next jury term of court was six months off; all of which offering of evidence and tender of proof the presiding judge refused to hear and receive.

The District Judge, in signing the bill, says: " The above statement might imply that the court had, on defendant's application, gone into the question of bail. If so, it is that far wrong. The defendant asked the court to hear and consider an application for bail, and to receive evidence on the question, which, on objection by the District Attorney, the court declined to do. The defendant then

stated his purpose to offer, if the question was opened, the evidence mentioned above. The court was of the opinion that where the witnesses had left the State, through the instrumentality and the procurement of those working for and managing the defence (not the lawyers, of course), as the court was satisfied is the case here, and the State was then forced to apply for a continuance, it was not a proper case for the court to go behind the indictment and inquire into the question of bail. It is true that an order for bond was once granted after hearing the evidence at the mistrial and afterward set aside, but in granting that order the court was largely influenced by the fact that the prisoner had originally surrendered the day after the killing and shown no disposition to avoid a trial and one trial had been had, resulting in no verdict. He failed to give the bond and made his escape by feigning sickness and deceiving the doctors and deputy in charge of him; went to the woods and avoided arrest until the next court passed (August term, 1894), and now a trial is again defeated by the means above described and set forth in the affidavit of the District Attorney. Under these circumstances the court felt constrained to refuse to go into the question of bail.

The article in the *Democrat Journal*, referred to in the bill of exceptions, was simply a private card published in that newspaper, by W. P. Hall, who is the judge of the District Court in which the indictment was found, which apparently was drawn out by a criticism upon his having, as judge of the district, permitted the accused to have been removed from the jail and placed in the custody of a deputy sheriff at a private house, from which it would seem he made his escape. This permission was based upon the fact that the accused had been unable to furnish bond under the authority given him so to, and upon a belief of the judge that his physical condition was such as to endanger his life were he to be forced to remain imprisoned at that time. In the course of the article the judge used the words which the relator has embodied in his petition.

The refusal of the District Judge to allow bail was followed by the present application.

———

The opinion of the court was delivered by

NICHOLLS, C. J.   Relator claims that this application comes before us in the exercise of the original jurisdiction conferred upon this

court by Article 89 of the Constitution. His prayer is that he be admitted to bail, and to this end he has ruled the sheriff, who has him in custody, to show cause why this should not be done. There is no claim that the relator's detention is unlawful, and the sheriff's connection, therefore, with the case is different from what it would have been had an issue of that kind been presented.

On the argument, counsel referred to the fact that the sheriff had made no return, but that in lieu thereof the District Judge and the District Attorney had filed statements or shown cause. The sheriff, on the rule to show cause, would, of course, have had no cause to show. As an officer he is not legally concerned whether the accused should, in the interval between indictment and trial, be imprisoned or set at large. In matters of this kind the District Attorney is the proper person with whom the proceedings should contradictorily be taken. In the appendix to Church on *Habeas Corpus* will be found a printed form by which he is to be notified of such applications. It is proper that other parties also interested should receive notice thereof. In the case at bar the District Judge has been called on to take action, and had, in fact, taken action in the matter of releasing the defendant on bail, and it was in the interest of the regularity of judicial proceedings that he should be advised of the proceeding. There was no absolute necessity, under the issue as made, that relator should be personally present, nor has he asked to be present (Church on *Habeas Corpus*, par. 389, q.). We assume that the sheriff, as in duty bound, will conform to whatever order the court may issue in the case.

In State *ex rel.* Bauman vs. Sheriff, 44 An. 1016, we said that whilst the writ of *habeas corpus* is one of right, it is not one of course; that a party seeking to avail himself of it is not at liberty to select for himself absolutely either the time or place for relief or the tribunal for which it is to be obtained; that so far from conceding it to be the duty of this court to entertain and act under each and every application for the writ on which we might legally do so, we were of the opinion that we should abstain from action where this might as well be done in competent lower courts, unless there should be special circumstances making immediate direct action or intervention necessary or expedient.

The great expense and inconvenience of bringing parties and witnesses to the city of New Orleans from remote parishes; the amount

of time necessarily occupied in examination and adjudication of issues placed through original hearings before a court whose jurisdiction was intended to be mainly appellate and supervisory, and only exceptionally original, and the (almost unavoidably) unsatisfactory and imperfect manner in which the exact facts of the different cases can be shown, furnish obvious reasons for the rule there announced.

Relator assigns as a special reason for our entertaining the present application, that the District Judge refused to entertain a similar one presented to him. An inspection of the record shows that after relator had been placed on trial for murder, and the jury had been discharged on account of their inability to agree on relator's application for bail, he was ordered to be released on furnishing bond in the sum of two thousand dollars; that being unable to furnish this bond he remained in prison. That being attacked later by illness the District Judge permitted him to be removed from jail and kept at a private house under custody of the sheriff. That he escaped from this house, and pending his absence the District Judge revoked the order for bail. That subsequently he was either captured by the officers or he surrendered himself, and his case was fixed for trial, but upon it being shown that two of the witnesses for the prosecution had absented themselves from the State the case (over relator's objection) was continued to the next jury term. That he then made a second application for bail, which the judge refused. Accused then asked that evidence be heard on the question of bail, which the court refused to receive on objection of the District Attorney.

The only original evidence attempted to be brought before us (we mean by this, evidence not before the District Judge) is a copy of the newspaper article, written by the judge, which, having been refused to be received by him, reached us only as part of the bill of exception. We are not called on in this rule to *mandamus* the District Judge to hear the witnesses and to receive the rejected evidence, nor to review or annul the action of the District Judge in having revoked the order for bail after he had granted it. The case is not before us upon a writ of *certiorari*, nor upon an appeal. No witnesses have been summoned, nor asked to be summoned by the relator before this court. We are not in position to know who the witnesses are by whom he says he could have established the particular facts which he asserts he could have established by them in

State ex rel. Vickers.

the District Court.   What they would have sworn to had they been brought before us; what the importance and effect of the facts which might have been sworn to *would have been*, had they been produced, we can not say.   No affidavits nor depositions of witnesses came up with the record.   The mere fact that the relator offered in the lower court to prove certain facts, and that the court refused to allow proof of the facts, does not establish, in this court, on this original application for bail, the facts themselves.   The very utmost effect of the bill would be to establish that certain acts had been attempted to be done by relator and refused to be allowed to be done in the District Court, and from this showing, to lay a foundation for action by this court, either for a *certiorari*, a *mandamus* or an appeal (were one permissible in such cases), or to establish to its satisfaction a condition of affairs such as would cause it, in the exercise of its discretion, to entertain an original application for bail.

Viewing the application as a recourse to relief under original powers, the order which issued in this case was granted.   We do not think the newspaper article annexed to the bill of exception, even if it were before us in proper form, should be considered.   It is a mere personal, extra-judicial unofficial act.   We would have expected that relator should have furnished to this court in some form the evidence which he says he unsuccessfully proffered in the lower court, but he has not done so.   He has brought up only matters which occurred in the lower court of which the District Court had judicial knowledge without the necessity of formal introduction of evidence in respect thereto before it, and on which it must have acted in declining the second application for bail.   We would have expected that the scope of the inquiry before us would have been enlarged beyond that which it had when the same matter was submitted in the District Court by, at least, the rejected evidence, but it has not been enlarged.   We find matters precisely where the District Judge left them, and in acting on this application, as matters stand, we have to go over the same ground and examine the same reasons which the judge did—*nothing more* (State *ex rel.* Price vs. Sheriff, 43 An. 857, and authorities).   Nothing additional is shown to us, unless the acts of the jud.e himself in originally having granted the order for bail, or in having subsequently revoked it, furnish matter for our *original consideration*.   His course on both points stands unreversed and unattacked.   We are asked, none the

less practically, to give force and effect to the former order and to
ignore the latter. This we can not do unless the order of revocation
was *without authority*, and that it was not, whether it was erroneous
or not. For the purposes of the present inquiry they have to go
together, or not all. *The acts of the lower court are not before us for
adverse criticism in this proceeding.*

The only matters really before the court *under the condition of the
evidence* are, first, the effect upon a right to bail, of a mistrial in a case
where a party has been indicted for murder, and the effect of that
fact when supplemented by the fact that his cause has been con-
tinued for five months.

An examination of the authorities bearing upon the question has
led us to the conclusion that the fact of a mistrial having taken
place has not the full force which relator assigns to it. Church on
*Habeas Corpus*, pars. 402 and 403, thus refers to the matter:

" A mistrial because of a disagreement of the jury as to a capital
offence does not establish *per se* that the proof is not evident, and
that the accused is entitled to bail." (Cittng *Ex parte* England, 23
Tex. App. 100, 127; State vs. Summons, 19 Ohio, 139; *Ex parte* Patti-
son, 56 Miss. 161, as explained in *Ex parte* Hamilton, 65 Miss. 98, 143).

" One, or even two mistrials will not furnish the accused the abso-
lute right to give bail, but where there has been one mistrial under
favorable circumstances for the prosecution, and the conduct of the
accused prior and subsequent thereto shows to the satisfaction of
the court, that he has not and never had any thought of avoiding
trial, and the evidence as preserved upon the trial is conflicting as
to his guilt of the charge, he may properly be admitted to bail."

From this it would appear that a mistrial coupled with other cir-
cumstances furnishes simply proper matter for the court to consider,
in exercising its discretion, as to whether or not it will admit to
bail. *Ex parte* Goans, 99 Mo. 103; People vs. Tinder, 19 Cal. 539.

In the case at bar, we know nothing of the evidence touching the
guilt or innocence of the accused, and while, both by the record,
which relator brings up, and the proffer of his testimony, it is made
known to us that he did, as a fact, escape from the custody of the
sheriff, the facts connected with his return are merely asserted, and
not attempted to be shown to us by evidence. The bill of exception
does not, *per se*, establish the facts therein referred to, as we have
already said.

In so far as the application to bail is based upon the fact that the trial of the accused has been postponed, it rests very greatly in the discretion of the court. The fact is one of those matters "independent of the merits of the prosecution" which Church refers to, in the consideration of which the conduct of the party plays an important part.

The object of imprisonment is to secure trial, and the escape of a prisoner weighs against him, when, under the circumstances in which relief is asked, relief is merely of grace, and not of absolute right. We are of the opinion that the application for bail as presented to us does not authorize us to grant the relief sought.

Application refused.

### DISSENTING OPINION.

WATKINS, J. This application is addressed to this *court*, and the object of relator is to obtain bail.

The application is made in pursuance of the provisions of Art. 89 of the Constitution, which expressly confers on this court the requisite jurisdiction to entertain it and grant the desired relief.

They are that " the Supreme Court and each of the judges thereof shall have power to issue writs of *habeas corpus* at the instance of persons in actual custody, in cases when it may have appellate jurisdiction."

This is a grant of *original* jurisdiction to this *court* acting as such, which is altogether independent of the *supervisory* jurisdiction, which is conferred upon it by Art. 90 of the Constitution.

A like jurisdiction is given to district judges within their respective districts. Art. 115.

Hence it is clear that either may act; that is to say, this *court*, or the judges thereof, or the judge of the district wherein the applicant is imprisoned.

The case presented is of a person who was indicted for murder. Was subsequently tried on that charge, and a mistrial was entered, the jury failing to agree. Was granted bail subsequently in the sum of $2000. Being, for the time, unable to give the requisite security, and suffering from illness, he was temporarily paroled; and, while thus paroled, made his escape. The order granting bail was revoked.

Afterward he returned and was again incarcerated in jail. At the next issuing term of court the case was fixed for trial; and on

the following day the fixing was set aside on the suggestion of
the District Attorney.   During the same term of the court the de-
fendant made a formal application for the fixing and trial of the
case, but it was refused by the court, and a continuance granted on
the written application of the District Attorney.

At this time the defendant made application for bail, and the judge
declined to entertain it, or to consider it at all.

To this *declination to act* the defendant reserved a bill of excep-
tions, and the judge appended his reasons.

In his present petition the relator sets out this state of. facts, and
prays that this court, acting as such, grant him relief.   In response
the District Judge and District Attorney have each made a statement
of facts, differing in no essential particular from the judge's state-
ment in the bill of exceptions.

To this application is appended a certified copy of the *entire record*
of the State vs. Vickers, including the bill of indictment, minutes of
court, bills of exception, order fixing amount of bail, and the subse-
quent cancellation of same; and also the State's application for a
continuance, the defendant's subsequent application for bail, and
the District Judge's reasons for declining to entertain the same—
thus fully exhibiting all the proofs necessary or useful in enabling
us to decide the question presented for the determination of this
court.

For the purpose of accuracy I have appended the reasons the Dis-
trict Judge assigned, viz.: "The above statement might imply that
the court had, on defendant's application, gone into the question of
bail; if so, it is that far wrong.   The defendant asked the court
to hear and consider an application for bail, and to receive
evidence on the question, which, on objection by the District Attor-
ney, the court declined to do.   The defendant then stated his pur-
pose to offer, if the question was opened, the evidence mentioned
above.   The court was of the opinion that where the witnesses had
left the State, through the instrumentality and the procurement of
those working for and managing the defence (not the lawyers, of
course), as the court was satisfied is the case here, and the State
was then forced to apply for a continuance, it was not a proper case
for the court to go behind the indictment and inquire into the ques-
tion of bail.   It is true that an order for bond was once granted
after hearing the evidence at the mistrial, and afterward set aside,

but in granting that order the court was largely influenced by the fact that the prisoner had originally surrendered the day after the killing and shown no disposition to avoid a trial, and one trial had been had resulting in no verdict. He failed to give the bond and made his escape by feigning sickness and deceiving the doctors and deputy in charge of him; went to the woods and avoided arrest until the next court passed (August term, 1894), and now a trial is again defeated by the means above described and set forth in the affidavit of the District Attorney. Under these circumstances the court felt constrained to refuse to go into the question of bail."

In my opinion this *court* is fully vested with original jurisdiction to act, as the charge made under which the defendant is indicted is *murder*, of which it has *appellate* jurisdiction. Constitution, Arts. 81 and 89.

From the statement of the District Judge it is clear that he declined to *entertain* the application at all, for he says:

" The above statement might imply that the court had, on defendant's application, *gone into the question of bail;* if so, it is that far wrong. The defendant asked the court to *hear and consider an application for bail,* * * which on objection from the District Attorney, the court declined to do."

The Constitution declares that " all persons *shall* be bailable by sufficient sureties, unless for capital offences, *where the proof is evident or presumption great."* Art. 9.

It has been frequently held that the finding of an indictment is " a presumption great," which precludes the accused from the benefit of bail.

But it has also been frequently held that in the event of a mistrial and the failure of the jury to agree, that presumption is overcome. It has been held that in case the defendant demands a trial and it be refused, and a continuance is granted at the request of the State, the presumption is overcome.

In this case not one but both of these incidents occurred.

Recognizing the right of the defendant to bail, under these circumstances, the District Judge granted an order of bail, and fixed the amount at two thousand dollars. But six months later he revoked the order, on the ground that the defendant had " escaped and shown a disposition to avoid a trial."

But in defendant's bill of exceptions, which was taken to the judge's declination to entertain his application for bail, it is stated that "after his alleged escape, he *voluntarily surrendered;* and this statement is not denied by the judge in his reasons for refusing the request. On the contrary, the fact is admitted, for he says: "He failed to give bond and made his escape; * * * went to the woods and avoided arrest until the next court had passed," etc.

But he was again incarcerated in jail, and at a subsequent term of court the case was fixed for trial at the instance of the District Attorney.

It is therefore clear that in so far as the escape had any prejudicial effect upon the presumption of the guilt of the defendant, the same was removed by his subsequent surrender.

This question was squarely decided in the recent case of State vs. Stewart, 47 An. 410.

In that case a motion was made to dismiss the defendant's appeal, on the ground that he had escaped from jail subsequent to the granting of the order of appeal, and to the motion was appended an *ex parte* affidavit of the sheriff, making proof of that fact. In reply the defendant's counsel filed with the record a subsequent affidavit of the same officer, showing that the defendant had *voluntarily surrendered* himself.

On these two affidavits this court assumed full and complete appellate jurisdiction of the appeal, overruled the motion, decided the case on its merits, reversed the judgment appealed from, and remanded the case for a new trial.

In my opinion that decision is correct.

But in view of the fact that in the exercise of this court's *appellate* jurisdiction it examined and passed upon that issue, how can it decline to do so now in the exercise of its *original* jurisdiction?

And if the facts be examined and passed upon—as I think the court is bound to do—how can a like conclusion be avoided? That is to say that the defendant's *subsequent surrender* neutralized the prejudicial effect of his previous escape.

Disembarrassed of that impediment the defendant is quite as much entitled to relief as *Stewart* was.

In so far as the further statement of the judge to the effect that certain " witnesses for the State had left the State through the in-

43

strumentality and the procurement of *those working for and managing the defence"* is concerned, I do not think it entitled to consideration. Surely an accused person can not be denied his constitutional right to bail on the supposition that his friends have influenced some of the witnesses to leave the State.

On this hypothesis he might be doomed to perpetual imprisonment.

For these reasons I dissent from the opinion of the majority.