Conaway, J.
This cause was submitted without action to the district court of the first judicial district upon an agreed statement of facts, under section 2570 of the Revised Statutes of Wyoming. Two questions arising in this proceeding have been reserved by said court, and sent to this court for its decision, under chapter 66 of the Session Laws of 1888.
On the 10th day of July, A. D. 1890, the county of Crook had an outstanding, unpaid, legal indebtedness, consisting of county warrants, of $55,000. On che 25th day of August, A. D. 1890, the board of county commissioners of said county of Crook, at a regular meeting at the county-seat of the county, in due time, form, and manner, ordered that said debt of $55,000 be funded, and that the funding bonds of said county, bearing 6 per cent, annual interest, be issued in exchange for the same, in accordance with the provisions of chapter 27 of the Session Laws of Wyoming of A. D. 1888, as amended by chapter 28 of the Session Laws of 1890. These bonds were actually issued, bearing date May 1,1891. After due advertisement of the sale of said bonds, the defendant, the Rollins Investment Company, became the purchaser of the bonds' at par, agreeing to take and pay for them if valid. This defendant company now refuses to perform its said contract, and refuses to accept and pay for said bonds as agreed, alleging as a reason for such refusal that the bonds are not valid. The first section of chapter 66 (Sess. Laws 1888) reads as follows: “Section 1. When an important or difficult question arises in an action or proceeding pending before the district court in any county of this territory the judge of said court may, on motion of either party, or upon his own motion, canse the same to be reserved and sent to the supreme court for its decision.” It should be remembered that the laws of the territory of Wyoming in force at the time of her admission as a state, and not repugnant to the constitution, are continued in force by constitutional provision until they expire by their own limitation, or shall be altered or repealed by the legislature. This section is not so repugnant, and has not so' expired, and has not been altered or repealed.
The single question involved hereupon which the answer to both questions sent to this court for its decision depends, is the question of the validity of these bonds. It must be presumed that the judge of the district court found the question either important or difficult or both. It is very questionable whether this finding is not conclusive. If it is not, we certainly agree with the judge of the district court that the question is an important one. It is important not only to the parties to this proceeding, but to other counties of the state, affecting seriously their power and ability to administer local government effectively and with economy ; and, through counties so situated as to be affected by the determination of this question, the question becomes important to the state, and to all of its people, and, inasmuch as attorneys of known standing and ability differ upon the question, it would seem to be also a difficult question. Its evident public importance is such that we have considered it at once in advance of all other matters before us.
*473 It is contended that the amount of the bonds is in excess of the amount that the county uiCrook could lawfully issue. The legal enactments under which this contention is made are found partly in an act of •the first session of the forty-ninth congress of the United States, (chapter 818, p. 171, §4,) and which went into effect July 30, 1886, partly in the laws enacted by the legislature of the territory of Wyoming, and partly in the constitution of the state. The section in the act of congress referred to reads thus: “That no political or municipal corporation, county, or other subdivision in any of the territories of the United States shall ever become indebted in any manner or for any purpose to any amount in the aggregate, including existing indebtedness, exceeding four per centum on the value of the taxable property within such corporation, county, or subdivision, to be ascertained by the last assessment for territorial and county taxes previous to the incurring of such indebtedness, and all bonds or obligations given in excess of such amount shall be void. That nothing in this act contained shall be so construed as to affect the validity of any act of any territorial legislature heretofore enacted, or of any obligations existing or contracted thereunder, nor to preclude the issuing of bonds already contracted for in pursuance of express provisions of law; nor to prevent any territorial legislature from legalizing the acts of any county, municipal corporation, or subdivision of any territory as to any bonds heretofore issued or contracted to be issued.” Within this limit it was competent for the legislature of the territory of Wyoming to regulate the indebtedness of the counties, which it after-wards did. Chapter 27 of the Session Laws of 1888 provides for the funding of county indebtedness by the issue of negotiable coupon bonds of the county, but limits the total bonded indebtedness to 3 per cent, of the total assessed valuation • of the property in such county as determined by the last annual assessment for county and territorial purposes, previous to the issue of such bonds. This was amended by the Session Laws of 1890, c. ■ 28, t-o the effect that “the total amount of bunds issued at any time under the provisions of this act, together with the existing indebtedness of such county, shall not exceed four per centum of the total assessed valuation of the property in such county as determined by the last assessment for county and territorial purposes preceding the issuance of such bonds.” Approved March 5,1890. It will be observed that the limit of indebtedness which a county might incur after March 30, 1886, including debts of ali classes, bonded or otherwise, was not to exceed four per cent, of the value of the taxable property in the county, to be ascertained by the last assessment for territorial and county taxes previous to the incurring' of such indebtedness; and so the law stood when the constitution went into effect by the admission of the territory as asíate, on the 10th day of July, A. D. 1890. In article 16 of the constitution we find the following provision: “Sec. 3. No county of the state of Wyoming shall in any manner create any indebtedness exceeding two per centum on the assessed value of taxable property in such county as shown by the last general assessment preceding: provided,however, that any county, city, town, village, or other subdivision thereof in the state of Wyoming may bond its public debt existing at the time of the adoption of this constitution in any sum not exceeding four per centum on the assessed value of the taxable property in such county, city, town, village, or other subdivision as shown by the last general assessment for taxation. ”
It was held in the case of the Board of the County Commissioners of Carbon County against the Rollins Investment Company[1] that the time of the adoption of the constitution, within the meaning of this section, is the date of the admission of Wyoming territory as a state of the Union, on July 10, A. D. 1890. The words “ adoption of the constitution” are sometimes used as meaning the final passage of the constitution by the constitutional convention, and the signing of the instrument by the members. The expression is also sometimes used as meaning the subsequent ratification of the constitution by the vote of the people. But the real final act of adoption by which all preceding acts of adoption took effect was the admission of the territory as a state, July 10, 1890. Not till then did we have a real, subsisting constitution of a state. Not till then was the proposed constitution made an actual, effective one. Not till then did it have the force of law. Not till then could it be said to havebeen adopted *475 as a constitution by anybody. Prior to that it was a mere proposition.
Such was the state of the law. The further material facts of the agreed case are that all oí the indebtedness of Crook county existing at the time of the adoption of the constitution had been from time to time lawfully contracted by said county under the territorial regime and within the above-mentioned 4 per cent, limit, and was a legal, valid, outstanding' indebtedness ; that the assessed value of the taxable property of the county of Crook for the year 1889 was $2,278,476.50, and that the indebtedness of the county on July 10, 1890, was less than 4 per cent, of this amount; that the assessed value of the taxable property of said county for the year 1890 was about $1,500,000, and that the said indebtedness of said county was more than 4 per cent, of that amount; but that said last-mentioned assessment was not in fact returned by the assessor of said'county, or equalized by the board of county commissioners, until after July 10, 1890; that the county of Weston was duly organized May 15,1890, out of and over a part of the territory of the said county of Crook. There is also stated a tender of the above-mentioned bonds by said county of Crook to said defendant company on payment therefor as agreed and understood, by the exchanging and delivery therefor the said warrant indebtedness, amounting to $55,000, to said county.
Some arguments ah inconvenientio have been urged to the effect that an exorbitant burden of taxation might be imposed upon the taxable property actually in a county on July 10,1890, largely in excess of 4 per cent, of the value of such property, but not in excess of the value of the property of the county as shown by the last general assessment for taxation, by the organization of new counties from the territory of such county between the date of such last assessment and said date of the adoption of the constitution. In the absence of statutory provision for an apportionment of theindebtedness such a result might occur. A county carrying a debt to the4 per cent, limit might be divided into four counties of about equal wealth. The county retaining the old name would be liable for the entire debt, making a burden of nearly 16 per cent, on its taxable property. Commissioners of Laramie Co. v. Commissioners of Albany Co., 92 U. ¡3. 307. But we have a statute providing for an equitable apportionment of the indebtedness in such cases between the counties in proportion to the taxable property of each, charging in such apportionment the county or counties containing the public property of the original co.unty with the value of the same. In this way the county containing the public property, or an undue proportion of it, may become burdened with a debt in excess, to a limited extent, of 4 per cent, of the value of its taxable property. But this additional debt is always offset by the value of the public property falling to such county. Besides, the debt, if valid when contracted, continues to be valid after the change in the county boundaries by the formation of new counties, and the consequent reduction of the value of the taxable property of the original county, and the increase in the per centum of her indebtedness to such value. Changing the form of the indebtedness from warrants to bonds does not increase it. It does not enlarge the burden. In this case it diminishes it. Cruok county’s debt of $55,000 in warrants bears interest at the rate of 8 per cent, per an-num. She now has the opportunity to replace those warrants with her bonds of the same amount, bearing interest at 6 per cent, per annum, if she may legally issue such bonds. This amounts to a saving to the county of $1,100 per annum in interest. The other benefits of funding are confessedly great. The law should be plain against the authority to fund to justify us in denying to Crook county these great advantages. On the contrary, both the letter and spirit of the law seem to be plainly in favor of the authority to fund. The portion of section 3 of the constitution applicable reads: “Provided, however, that any county * * * may bond its public debt existing at the time of the adoption of this constitution in any sum not exceeding four per centum of the assessed value of the taxable property in such county, * * * as shown by the last general assessment for taxation.” This language would seem naturally to refer to the last general assessment previous to the adoption of the constitution. It is argued, however, that the evident purpose and spirit of theeonstitution are to enable the counties to fund their valid and legal debts existing at the time of its adoption, and that the language should be understood as referring to the last general assessment for taxation previous to the contracting of the debts, respectively; otherwise, a debt legal and valid, and *477 within the 4 percent, limit, when contracted, might be in excess oí 4 per cent, of the last genera* assessment for taxation preceding the adoption of the constitution, and thus not fundable. This argument, in view of all the legislation upon the subject, and the known benefits of funding, has much weight. It is not, however,necessary to decide this question in this case, and we do not decide it. The agreed case is that the indebtedness of Crook county was legal and valid, as it was from time to time contracted. The figures submitted show also that the debt of the county existing at the time of the adoption of the constitution was not more than 4 per cent, of the value of the taxable property of the ■county at the last general assessment previous to such adoption, — that is, the assessment of 1889. Under either construction the issuance of the bonds of Crook county is authorized by law. The bonds, according to the agreed case, are legal and valid.
The two questions reserved and sent tv this court for its decision are: First. To what extent, and under what general assessment for taxation, could the county •of Crook, Wyo., on the 1st day of May, A. D. 1891, issue its funding bonds for valid indebtedness existing, outstanding, and unpaid at the time of the adoption of the constitution of the said state? To this question we answer that the county of •Crook, Wyo., on the 1st day of May, A. D. 1891, could issue its funding bonds for valid indebtedness existing, outstanding, and unpaid at the time of the adoption of the constitution of the said state, at least to the extent that such issue, together with allother indebtedness of said county existing, outstanding, and unpaid at the time, should not exceed 4 per cent, of the assessed value of the taxable property in ■such county as shown by the general assessment for taxation of the year A. D. 1889, and such issue could be made under the general assessment for taxation of that year. Second. Are all of the said funding bonds of Crook county, herein mentioned and described as having been tendered to the defendant company, the lawful and valid obligation of the said county of Crook, under the constitution and laws of Wyoming, and is the said company compellable to receive and pay for the same, as such, as agreed ? To both branches of this question we answer, “Tes.” And it is ordered that this cause be remanded to the district court to render judgment according to the stipulation this day filed, and for further proceedings in accordance with this opinion.
Giíoesbeck, C. J., and Mereell, J., concur.