## STATE v. CROCKER.

SUPREME COURT—JURISDICTION ON RESERVED QUESTIONS—CRIMINAL LAW—BAIL—IN CAPITAL OFFENSES—HEARING ON APPLICATION FOR BAIL.

1. The statute authorizing the district court to reserve important and difficult questions arising in a cause for the decision of the Supreme Court is constitutional. (L. 1888, Ch. 66.)

2. Such cases, although the questions are reserved before judgment, come within the appellate jurisdiction of the Supreme Court; and also within the authority granted to that court to exercise a superintending control over all inferior courts under such rules and regulations as may be prescribed by law.

3. In capital offenses the right to bail in favor of an accused arises when the proof is not evident nor the presumption great. (Const., Art. 1, Sec. 14.)

4. An indictment for a capital offense is not conclusive evidence that the proof of guilt is evident, or the presumption great, in an application for bail. It is, however, prima facie evidence thereof.

5. In so far as the statute (L. 1890, Cr. 23) attempts to forbid bail after an indictment found by a grand jury, regardless of whether or not the proof is otherwise evident, or the presumption of guilt otherwise great, it is in conflict with Section 14 of Article 1 of the constitution.

6. Where one is charged by indictment with a capital offense, if, upon a proper hearing and sufficient showing, it appears that the proof is not evident and the presumption not great, the accused should be admitted to bail in such sum as, considering the gravity of the offense charged, will, in the judgment of the court or judge, procure his attendance and presence for trial.

7. Upon a written and sworn application for bail by one accused of a capital offense, the court, or judge in vacation, should proceed, by hearing the evidence, to determine the character of the proof, and the extent of the presumption, where such application denies all guilt, and alleges that the proof is not evident and is insufficient to authorize or support a conviction for any offense whatever, and that there is no presumption of guilt arising from the proof or otherwise; that the case is one where bail is guaranteed by the constitution; and that the defendant is able and desirous to give bail with sufficient sureties in any reasonable amount.

8. On such a hearing, the accused being charged by indictment, the burden of proof is upon the defendant, and both parties are entitled to compulsory process to secure the attendance of witnesses.

9. The inquiry should not be limited to determining the probable degree of the homicide, but should include the determination of the evident character of the proof, or the strength of the presumption respecting whether or not the defendant did the killing, or was connected with it as a guilty agent.

10. In a charge of murder in the first degree, which is capital, bail should be refused in all cases where the judge would sustain a conviction for murder in the first degree, if pronounced by a jury on such evidence of guilt as is ex-

hibited on the hearing for bail, and where the evidence is of less efficacy bail should be allowed.

11.  On a hearing for bail in such cases the indictment, if any, while not conclusive evidence, against the right to bail, should be taken into consideration, together with the evidence.  It may in a doubtful case have the effect of turning the scale.

[Decided June 10, 1895.]

RESERVED QUESTIONS from the District Court for Uinta County, HON. JESSE KNIGHT, Judge.

Application for bail by Edwin S. Crocker, charged by indictment with the crime of murder in the first degree.  The facts are fully stated in the opinion.

*S. T. Corn, J. H. Ryckman* and *Lacey & Van Devanter,* for defendant.

The Supreme Court has jurisdiction of cases on reserved questions (L. 1888, p. 140; Const., Art. 5, sec. 2).  The general superintending control granted the court is something additional to its appellate jurisdiction.  It is different from the issuing of writs in aid of its appellate jurisdiction.  Since the admission of the State the statute authorizing the reservation of questions for the decision of the Supreme Court has been acted on and such questions repeatedly decided.  That practice amounts to a contemporaneous construction of great force respecting the validity of the statute.  The U. S. Supreme Court, with only appellate jurisdiction, took jurisdiction of questions where there was a division of opinion between the judges in the circuit court, and decided the same.  (Hepburn v. Ellzey, 2 Cranch, 445; U. S. v. Gurney, 4 id., 333; Sergeant v. Biddle, 4 Wheat., 508; U. S. v. Wiltberger, 5 id., 76; U. S. v. Daniel, 6 id., 542; Wilkins v. Hollingsworth, 6 id., 240; Miller v. Stewart, 9 id., 680; Schimmelpennich v. Bayard, 1 Pet., 264; U. S. Bank v. Owens, 2 id., 527; U. S. v. Bank, 6 id., 29; U. S. v. Randenbush, 8 id., 288; Veazie v. Wadleigh, 11 id., 55; N. Y. v. Miln, 11 id., 102; U. S. v. Chicago, 7 How., 185; Ex parte Milligan, 4 Wal., 2; U. S. v. Harris, 106 U. S., 629; U. S. v. Britton, 108 id., 199; U. S. v. Waddell,

112 id., 76; U. S. v. Northway, 120 id., 327; see Dow v. Johnson, 100 U. S., 158; 1 Abbott's U. S. Pr., 338-341; 2 id., 272-274.) A similar statute has been approved in Texas. (Waco v. Waco, 86 Tex., 661.)

Whereas, at common law there was no right to be admitted to bail, but in certain cases only a discretion in the judge, in the American States the fundamental law of most of them has put it beyond the power of either the courts or the legislature to refuse bail except in one particular case. Sec. 14 of Article I of our constitution is in harmony with the enlightened idea, and provides that "all persons shall be bailable by sufficient sureties except for capital offenses when the proof is evident or the presumption great." Secs. 6, 7 and 10 of Article I of the constitution still further illustrate the same spirit. With us there is no statute requiring any witness to keep secret the things to which he testified before the grand jury, nor are the grand jurors themselves sworn to such secrecy with reference to the testimony of witnesses before them. Revised Statutes, Secs. 3223, 3233, 3234. The policy of the law in this State is to preserve, as far as possible, the right of all its citizens to life, liberty and property, freedom from malicious attacks and stabs in the back, or in the dark, whether the assailant shall attempt such attacks through the means of a grand jury or otherwise. And the intention of the people in the constitution is clearly and manifestly to emphasize their dissent from the old common law rules and principles as to admission to bail, and their clear intention that bail cannot be refused in any case excepting a case of capital felony, nor even in such case except where the proof is evident or the presumption great. Liberty of the citizen charged with crime is guaranteed with proper safeguards until guilt is established, to the end that, as far as possible, only the guilty shall be punished.

The decisions in States having our constitution as to bail, and having provisions similar to ours with reference to the secrecy of things occurring before the grand jury, are in point upon the question here; and are very largely, if not entirely, in favor of our contention that the accused in this case is entitled to bail. The finding of an indictment does not pre-

clude inquiry into the facts to ascertain whether the prisoner should not be admitted to bail. In re Losasso, 15 Colo., 163; Lynch v. People, 38 Ill., 494; Ex parte Wray, 30 Miss., 673; Lumm v. The State, 3 Ind., 293; Schmidt v. Simmons, 137 Ind., 93; State v. Summons, 19 Ohio, 139; Ex parte Floyd, 60 Miss., 913; In re Finlen (Nev.), 18 Pacific, 827; In re Robertson (Tex.), 12 S. W., 1136; Ex parte Albitz, 29 Tex. App., 128; Thrasher v. State, 26 Fla., 526; Finch v. State, 15 id., 633; Ex parte Jones, 31 Tex. Cr., 422; Ex parte Bonner, 100 Ala., 114; In re Smith, 26 Tex. App., 134.

It must be held that the people, by the constitutional provision, did not intend to continue in force the proviso of the statute of 1890, but, on the contrary, to repeal it.

*Benjamin F. Fowler*, attorney general, *Cyrus Beard, M. C. Brown* and *J. C. Hamm*, for the State.

As to the jurisdiction of the Supreme Court under the Act of March 9th, 1888, to render a decision where important or difficult questions are sent by the lower court to this court for its decision.

The act of 1888 was passed by a territorial legislature, prior to the adoption of the constitution of the State, and at a time when the judicial power was vested in a Supreme Court consisting of a chief justice and two associate justices, such justices being also district judges, there being no separate Supreme Court, as is now provided under our present constitution; the district judges meeting together as a Supreme Court at the time fixed by statute.

Under Section 9 of the Organic Act of Wyoming, page 31, it was provided that the jurisdiction of the several courts shall be appellate and original, and there was consequently no conflict between the Organic Act and the legislative act of 1888, giving to district judges the right to certify difficult questions to the Supreme Court.

By the adoption of the constitution, among other things, it was provided by Section 2, of Article V, that the Supreme Court shall have general appellate jurisdiction . . . in both civil and criminal causes, and shall have a general super-

intending control over all inferior courts, under such rules and regulations as may be prescribed by law.

There is no suggestion in this section as to original jurisdiction given to the Supreme Court in any case, and the only place in the constitution of this State where such jurisdiction is given, is in Section 3 of Article V.

"The Supreme Court shall have original jurisdiction in quo warranto and mandamus as to all State officers, and in habeas corpus."

The provision that the Supreme Court shall have general superintending control over all inferior courts in this State, and general appellate jurisdiction in both civil and criminal cases, does not certainly give to the court the original jurisdiction of the character asked in the case at bar.

In Section 10 of Article V, it is provided that the district courts shall have original jurisdiction of all cases, both in law and equity, and in criminal cases.

Upon the proposition that this court is without jurisdiction, the following were cited: (Lyon Co. v. Esmeralda Co., 18 Nev., 166; Hubbell v. McCourt, 44 Wis., 586; Ex parte Cosner, 4 Tex. App., 89; Arberry v. Beavers, 6 Tex., 470; Baker v. Chisholm, 3 Tex., 157; Conter v. R. R. Co., 24 Minn., 313; Hoffman v. Mann, 11 id., 366; Shurmeir v. R. R. Co., 12 id., 351; McNamara v. Ry. Co., id., 389; Sturges v. Rogers, 16 Ind., 18; French v. Lighty, 9 id., 475; R. R. Co. v. Condon, 8 Gill & J., 448; Wheeler v. Irr. Co., 9 Colo., 248; In re Rogers, 14 Colo., 18; Marburry v. Madison, 1 Cranch, 137; Vail v. Dinning, 44 Mo., 210; Cruller v. Keener, 17 Ill., 246; Reed v. McCormick, 4 Cal., 342; Sanger v. Truesdale, 8 Mich., 543; Jones v. Smith, 14 id., 334.) The act of March, 1890, providing that no person shall be admitted to bail after an indictment found against him charging a capital offense, was passed after the constitutional convention had completed its labors, although the constitution did not go into effect until July, 1890. It is held in many States that, after indictment found, the presumption of guilt is so strong as to be conclusive against admission to bail. (State v. Mills, 2 Dev. & B., 552; Hight v. U. S., 1 Morris (Ia.),

407; Terr'y v. Benoit, 1 Mart. (La.), 142; People v. McLeod, 1 Hill, 377; People v. Tinder, 19 Cal., 539.)

. POTTER, JUSTICE.

Edwin S. Crocker stands indicted in the district court of Uinta County for the murder of Harvey Booth. The indictment charges murder in the first degree, which is a capital offense. He was arraigned and pleaded not guilty, and was remanded to the custody of the sheriff and is confined in the jail of said county. On April 19, 1895, the defendant made a written application to the court for admission to bail, alleging as grounds or reasons therefor that the case had been continued for the term; that such continuance was occasioned by the fact that the regular panel of the petit jury had been discharged before the finding of the indictment, and there was not sufficient time remaining of the April term within which to try the cause. Further, that he is not guilty of any offense charged in the indictment; that the proof against him in said cause is not evident, and is wholly insufficient to authorize or support a conviction for any crime or offense whatever; that there is no presumption of his guilt of any offense charged in said indictment, arising from the proof or otherwise, and that the cause is one in which the defendant is entitled to bail under Section 14 of Article 1 of the constitution of this State; and further, that he desires, and is able, to give bail with sufficient sureties in any reasonable sum or amount. In the application thus presented, a hearing was prayed to the end that he might be admitted to bail.

Upon the submission of the application to the district court, the judge thereof, upon his own motion, reserved the matter to this court for its opinion upon certain important and difficult questions deemed by the said court to arise upon said application. Said questions are as follows:

First: Can and should the district court entertain an application for bail by a defendant, after indictment found and returned by a grand jury, charging him with the crime of murder in the first degree, when such application for bail is

based upon the fact that the proof of guilt is not evident and the presumption of guilt is not great?

Second:   Is an indictment found and returned by a grand jury charging a capital offense conclusive evidence that the proof of guilt is evident, or that the presumption of guilt is great?

Third:   Do the provisions of chapter 23 of the session laws of 1890, approved March 3, 1890, preclude the admission to bail of one charged with a capital offense in an indictment found and returned against him by a grand jury?

Fourth:   Are any of the provisions of chapter 23 of the session laws of 1890 in conflict with section 14 of article 1, of the constitution of the State?

Fifth:   Where one is charged by an indictment with a capital offense, alleged to have been committed January 26, 1895, do the provisions of chapter 23, of the session laws of 1890, preclude the defendant from admission to bail, or should he be admitted to bail if, upon a proper hearing and sufficient showing, it appears that the proof of his guilt is not evident, and that the presumption of his guilt is not great—the time of the death of the deceased being admitted and conceded to be as stated in the indictment, and since the admission of Wyoming as a State?

Sixth:   In capital offenses, where the proof of guilt is not evident, and the presumption of guilt is not great, is bail a matter of right in the defendant, under the constitution and laws of this State, after indictment found and returned by a grand jury?

Seventh:   If the last question be answered in the affirmative, can and should the court, or judge in vacation, proceed by hearing the evidence, to determine the character of the proof and the extent of the presumption, where the defendant files in the cause and presents to the court his written and sworn application, alleging, among other things, "that he is not guilty of any offense charged in the said indictment, that the proof against him in this cause is not evident, and is wholly insufficient to authorize or support a conviction for any crime or offense whatever—that there is no presumption

of his guilt of any offense charged in such indictment, arising from the proof or otherwise, that this cause is one in which the defendant is entitled to bail under Section fourteen (14) of Article one (1) of the constitution of the State of Wyoming, and that this defendant is able and desirous to give bail herein, with sufficient sureties in any reasonable sum or amount?"

Eighth: What is the proper and necessary procedure to be followed on a hearing had to determine whether the proof is evident or the presumption great upon an application for admission to bail, after indictment found, charging defendant with a capital offense? Upon such hearing does the burden of proof rest upon the prosecution or the defendant, and are the State and the defendant entitled to subpoenas and compulsory process to secure the attendance of witnesses?

Ninth: Upon the hearing of an application for bail, in a capital case, after indictment, should the inquiry be limited to determining the probable degree of the homicide?

Tenth: Upon such a hearing, where no dispute arises as to whether the killing was probably murder in the first degree, on the part of the person doing the slaying, but where the defendant denies all connection with the killing, may the inquiry extend to the probable connection of the defendant with the homicide as a guilty agent?

Counsel for the State in their brief, and also upon oral argument, questioned the jurisdiction of this court to pass upon questions thus reserved. It is strenuously insisted that the statute of the territory which authorized such a proceeding conflicts with the constitution and attempts to confer upon this court a jurisdiction not authorized by that instrument.

At the outset it should be said that it is not the desire of this court to extend, by construction, its jurisdiction, nor to assume to itself any jurisdiction not warranted by the constitution, or within the fair and reasonable meaning thereof, neither will it hesitate to exercise to the fullest extent, if necessary, the jurisdiction and powers legally conferred upon the court, when required to do so by appropriate proceedings.

The subject has been ably presented by counsel on both sides in exhaustive arguments seldom equaled in this court.

The territorial statute of 1888 provided that when an important or difficult question arises in an action or proceeding pending before the district court in any county, the judge of the court, on motion of either party, or upon his own motion, may cause the same to be reserved and sent to the Supreme Court for its decision. When such a reservation occurs the statute requires the original papers in the case to be sent to the Supreme Court, and that the matter stand for hearing at the next term of such court upon the papers; that upon the hearing the Supreme Court may remand the same, together with the original papers, to the district court for further proceedings, and the clerk of the Supreme Court is required to certify the order of the court to the clerk of the district court, who, it is provided, shall immediately enter the same upon the journal of the district court, and, when so entered, such order shall stand as the order of said district court. Laws 1888, Chap. 66, p. 140. It was held by the Supreme Court of the territory that, under this statute, it was indispensable to any action by that court that the question which is conceived to be difficult or important should be specially stated by the district court, and, without such statement, the Supreme Court had not power to consider any questions which may arise in the case. Corey v. Corey, 3 Wyo., 210.

In Com'rs of Crook Co. v. Rollins Investment Company, 3 Wyo., 470, this court, in considering certain reserved questions from the district court of Laramie County, gave expression to the opinion that the statute of 1888 was not repugnant to the constitution and was valid and subsisting statute law of the State. In that case, however, the question of jurisdiction was not raised or even suggested by counsel, and notwithstanding what is there said, we have given the matter the benefit of original investigation.

It is conceded by counsel for the State that the act of 1888 was within the power of the legislature of the territory, and was in force as a law thereof; but it is urged that it did not remain in force after the admission of the State, for the reason that it conflicts with the constitution and attempts to confer authority upon this court not permitted thereby.

Section 2 of Article V of the constitution is as follows: "The Supreme Court shall have appellate jurisdiction, co-extensive with the State, in both civil and criminal causes, and shall have a general superintending control over all inferior courts, under such rules and regulations as may be prescribed by law."

Section 3 of the same article is as follows: "The Supreme Court shall have original jurisdiction in quo warranto and mandamus as to all State officers, and in habeas corpus. The Supreme Court shall also have power to issue writs of mandamus, review, prohibition, habeas corpus, certiorari, and other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction. Each of the judges shall have power to issue writs of habeas corpus to any part of the State upon the petition by or on behalf of a person held in actual custody, and may make such writs returnable before himself, or before the Supreme Court, or before any district court of the State or any judge thereof."

Counsel for the State assume that the jurisdiction or authority given to the Supreme Court by the statute of 1888 is original in its nature, and therefore contend that the original jurisdiction of the court is clearly limited by the constitution to cases within which the case at bar does not come. On the other hand, counsel for defendant insist that proceedings of this character are strictly within the appellate jurisdiction of this court, as well as authorized by that provision of the constitution giving this court a superintending control over all inferior courts.

The language of our constitution is not entirely similar to any to which our attention has been called. In some of the older States, the constitutions respectively leave the jurisdiction of the courts to be defined by law. This is broader than our own. In others, and probably the majority, it is provided with reference to the Supreme Court that except as otherwise provided in the constitution, it shall possess appellate jurisdiction only. In many, a superintending control over all inferior courts is granted without modification, in others such superintending control is connected with the

power to issue certain remedial writs or writs of review. In
our own case and in Colorado, and possibly some others, the
superintending control is to be exercised under such rules and
regulations as may be prescribed by law.

In the State of Michigan, the Supreme Court was vested
with a superintending control over all inferior courts, and
power to issue certain writs and determine the same, and in
other cases to have appellate jurisdiction only. Two cases
from that State are cited by counsel for the State in support
of their contention. Sanger v. Truesdail, 8 Mich., 543; Jones
v. Smith, 14 Mich., 334. No opinion seems to have been filed
as a basis for the order in those cases, at least none is reported,
but it is stated that the court held that it possessed no juris-
diction over cases reserved from the circuit courts, and not
involving the exercise of appellate powers. In that State
there was a statute authorizing a cause, so far as necessary to
present the question of law, to be reserved for the opinion of
the Supreme Court whenever any question of law should arise
in any civil cause, or criminal prosecution in any circuit court,
which, in the opinion of the circuit judge, should be so re-
served. The Supreme Court of that State had exercised such
jurisdiction in several cases, and in one, Bagg v. City of De-
troit, 5 Mich., 66, the jurisdiction was expressly upheld in the
opinion rendered by Justice Campbell. The jurisdictional
question therein raised, however, seems to have been confined
to such authority in chancery causes. Judge Campbell in that
case said: "When cases are reserved upon these principles,
we think we have jurisdiction and will cheerfully exercise it."
With but one change in the personnel of that court, the con-
trary seems to have been held in the two cases first above cited;
and it is somewhat peculiar that in view of the discussion and
decision in Bagg v. Detroit, the later cases should not have
been supported by an opinion in one or the other announcing
the reasons for the apparent overruling of the former case.
The Michigan cases are the only ones cited as directly in point
in support of the proposition that we are without jurisdiction,
although others are referred to as showing that such reserved
cases do not come within the purview of appellate jurisdiction,

but none of them are directly in touch with the questions before us. We respect very much the learning and ability of the Michigan court, but cannot accord so much persuasive authority to a decision even from that court which does not afford us a knowledge of the reasons upon which it is based, as we would otherwise be inclined to do.

The principal argument advanced in favor of the contention that this is not within the appellate jurisdiction, is that in this class of cases, no decision or judgment has been rendered in the lower court, and there is nothing to appeal from or to predicate error upon, and therefore there can be no appeal, or proceedings in error. It must be confessed that the argument is not without much strength, but is it essential in all cases to the exercise of appellate jurisdiction that there should have been a judgment or decision by the trial court. In the exercise of such appellate jurisdiction the Supreme Court of the United States for many years took cognizance of and decided cases certified from the U. S. circuit courts in which the opinions of the circuit and district judges were divided, and without the entering of any judgment in the case below, by virtue of an act of congress authorizing it. This, too, in the face of a dissenting opinion in one case by Justice Catron wholly based upon the proposition that the court had no such jurisdiction as not being appellate. It was evidently not considered indispensable to the exercise of that jurisdiction that there should have been a judgment or decision upon the question. We are not able to perceive any distinction in this respect between the act of congress and our own statute. In either case no judgment is rendered, and if that determines whether the jurisdiction is appellate or not, then the cases under the act of congress would have been amenable to the same doctrine or contention. I think we must assume that the Supreme Court of the United States acted in and determined the questions certified in such cases, on the ground that although no judgment had been rendered, the cases came within its appellate jurisdiction. Indeed, in the case of White v. Turk, 12 Peters, 238, the whole cause having been certified up instead of certain separate questions of law,

and apparently in a case wherein there would have been no appeal from any final judgment because of the amount involved, the court said: "This certificate, therefore, brings the whole cause before this court; and if we were to decide the questions presented, it would, in effect, be the exercise of original rather than appellate jurisdiction," and in Veazie v. Wadleigh .et al., 11 Pet., 55, the same court, by Story, Justice, in referring to the character of the proceeding, in a case in which a discontinuance was moved by the plaintiff below, and the defendant insisted upon their right to have a decision upon the certified questions, expressed itself thus: "In construing a statute providing for such a novel mode of obtaining the decision of an appellate court upon the matters of controversy between the parties, it is not surprising that there should be some difficulty in ascertaining the precise rights of the parties," and again: "It is clear that the statute does not, upon the certificate of division, remove the original cause into this court: on the contrary, it is left in the possession of the court below for the purpose of further proceedings if they ·can be had without prejudice to the merits; so that, in effect, the certified questions only, and not the original cause, are removed to this court," and so it was held that if one originally having the right to discontinue the cause in the lower court had done so, it left the appellate court with nothing to decide but abstract questions of law. Many other opinions in that court might be quoted from to further illustrate this point, but we will only cite some of the cases in which questions arising in such proceedings have been considered. U. S. v. Gurney, 4 Cranch, 333; Sergeant v. Bidde, 4 Wheat., 508; U. S. v. Wiltberger, 5 id., 76; U. S. v. Daniel, 6 id., 542; Wilkins v. Hollingsworth, 6 id., 240; Miller v. Stewart, 9 id., 680; Schimmelpennick v. Bayard, 1 Pet., 264; Bank v. Owens, 2 id., 527; U. S. v. Randenbush, 8 id., 288; U. S. v. Chicago, 7 How., 185; Ex parte Milligan, 4 Wall., 2; Ogle v. Lee, 2 Cranch, 33; Adams, &c., v. Jones, 12 Pet., 207; Dow v. Johnson, 100 U. S., 158-163.

A somewhat analogous question being before the Supreme Court of Ohio, Judge Thurman gave it as his opinion that

the law might allow an appeal before judgment, that it was not clear that there was no such thing as appellate jurisdiction unless there is a judgment or decree to be appealed from. True, the case was not decided upon that point, but the question was fully discussed in the opinion. Chase v. Washburn, 2 O. St., 99.

In Wisconsin a statute was enacted by which it was provided that if, after conviction of any person in a circuit court, any question of law shall arise which, in the opinion of the judge, shall be so important or so doubtful as to require the decision of the Supreme Court, he shall, if the defendant desire it or consent thereto, report the case so far as may be necessary to present the question of law arising therein, and thereupon all proceedings in that court shall be stayed. The constitution of that State confines the jurisdiction of the Supreme Court to appellate proceedings in stronger language than we are bound by. The Supreme Court of Wisconsin has taken jurisdiction of many such questions, all before final judgment. In State v. Fellows, 50 Wis., 65, after plea of guilty of adultery, the question was certified to the Supreme Court whether the facts stated in the information constituted the said crime. The answer was in the affirmative, and the order of the court was that the circuit court be directed to proceed to judgment. In State v. Goodrich, 84 Wis., 359, the questions were certified upon a motion in arrest of judgment, and the questions being answered in the negative, the Supreme Court advised the municipal court to arrest judgment and discharge the defendant from custody. No judgment having been rendered, and neither party appealing or grounding error upon any ruling of the lower court, that court would not have had jurisdiction if the position of counsel for the State is sound.

We cannot adopt the view that this class of cases invoke any original jurisdiction in this court. No process issues from this court, no pleadings are filed here, no judgment is rendered by us. It may be doubtful if the provision of Section 3 of Chap. 66 of the laws of 1888, that our order shall stand as the order of the district court when entered on its journal,

is now proper, but it has not been the custom of this court to regard that provision. In all cases we have either confined ourselves to an answer merely of the questions certified, or advised or directed what order the lower court should make. If, in any case, we have overstepped that custom, it has been an inadvertence. On the other hand, we are unable to avoid the conclusion that such cases come within the appellate jurisdiction of this court. Beyond that, however, the constitution grants to the Supreme Court a superintending control over all inferior courts under such rules and regulations as may be prescribed by law. Why may not the legislature, under this clause, well authorize such superintending control to be exercised in important and difficult matters in the manner provided for by the statue of 1888? It seems to us that there is neither impropriety nor invalidity in so doing. The advantages of such a proceeding are well shown in an opinion of the Supreme Court of Connecticut, Nichols v. City of Bridgeport, 27 Conn., 459. Referring to a similar statute of that State, the court say: "It was adopted for the purpose, among others, * * * for the benefit of its suitors by procuring in that mode in advance the opinion of this court on questions of difficulty or importance which might otherwise after the final determination of a case be brought before us by a writ of error, and thus settling at the earliest practicable period points arising on the trial of the case or in the previous stages of it, which otherwise could be reviewed only by writ of error, and where the reversal of the decisions on them would be attended with great, and as the event would prove, useless delay and expense already sustained, in addition to that which would be afterwards incurred by another trial of the case. A reference to a case reserved for the opinion of this court on a demurrer to a declaration at law or bill in equity, or on facts specially found by the court or jury, or on a motion for new trial for alleged errors in the rulings or charge of the superior court, will at once suggest other and very great advantages, which it is unnecessary to specify, attending the practice of reserving questions for our advice." We quote from that case, not because it is an adjudication

supporting our conclusion, because in that State the legislature has constitutional authority to define the jurisdiction of the various courts, but as nicely expressing the benefits which may generally accrue from such a mode of proceeding. Should this privilege at any time be abused, we apprehend this court or the legislature can easily remedy the same.

We therefore conclude upon this branch of the case that this court has jurisdiction of this matter, under the provisions of the statute of 1888, and that such jurisdiction is permitted by the constitution.

We now come to a consideration of the questions reserved for our decision.

The constitutional right to bail is granted by the provisions of Section 14 of Article 1, as follows: "All persons shall be bailable by sufficient sureties, except for capital offenses when the proof is evident or the presumption great." The right to furnish bail with sufficient sureties, then, arises in favor of any person accused of crime and before conviction, absolutely and without exception in cases of all crimes not punishable with death; and in capital cases when the proof is not evident or the presumption not great. This much, at least, is clear, and is apparently conceded. It is ably insisted, however, that after indictment found it is conclusive that the proof is evident, and that the presumption of guilt is great so far as the question of admitting to bail is concerned. This, we understand, is contended for as a general principle, and a statute of the territory of Wyoming enacted in 1890 is also invoked to sustain this claim. "All offenses shall be bailable under the laws of Wyoming, by sufficient sureties, except capital offenses when the proof is evident or the presumption great. Provided, that no person shall be admitted to bail after an indictment has been found against him charging a capital offense." Chap. 23, Laws of 1890, Section 1. If the legislature of the State has the power to so provide after indictment is found charging a capital offense, then the statute is in force and would control; if that authority is not possessed by our legislature now, the law of the territory does not remain of binding force, because it is clear that the constitu-

tional provision is self-acting, conferring an absolute right, so far as it goes, and if the statute is in force to its full extent and is controlling, it would deny bail to the defendant in the case at bar, he being charged by indictment with a capital offense. May the legislature so control the courts as to exclude any consideration of the actual evident character of the proof or the actual greatness of the presumption of guilt when an indictment charging the offense has been found by a grand jury? When the statute of 1890 was enacted, our only mode of presentment for crime was by indictment found by a grand jury. Pursuant to constitutional authority since the admission of the State into the Union, the legislature has authorized prosecution for crime upon information filed by the prosecuting attorney, and a grand jury is only called upon order of the court, and we know that in practice this is now done only in exceptional cases. An information filed charging a person with a capital offense would not either under the constitution or statute preclude the right to bail, unless the proof is evident or the presumption great. Regardless of the distinction made by statute which created no distinction when adopted, is there any such greater sanctity surrounding the presentment of a grand jury than a prosecution by information? We apprehend none such exists, and that no such distinction is recognized by the constitution or laws since enacted changing the mode of prosecuting for crime. Whether it is indictment or information, the prisoner in each instance is charged with the same crime, he enjoys the same rights and privileges as to trial. The same presumption and protection are thrown around him upon the trial. The sole purpose subserved by either is to bring the accused properly to the bar of the court to answer and stand trial upon the accusation. So far as the two methods are concerned, the accused, in the event that he is charged by information, is generally given a preliminary hearing before a magistrate, when he may be present, be confronted with the witnesses against him, introduce testimony on his own behalf if he desires, and have the merits of the charge presented to the magistrate by counsel on argument. In case of indictment,

he is not heard, he is not confronted by the witnesses against him, he is not represented by counsel. The magistrate on the one hand is chosen by the people to serve a term of years and to officiate in all such cases. On the other, the grand jury are now selected by the sheriff under an open venire, who sit only during one term of court and hold secret sessions. True, there is no subsequent secrecy thrown around the testimony adduced before them, under our laws, as their subsequent secrecy is disclosed by their oaths to be, to keep secret the counsel of the State, their fellows and themselves. Their deliberations are secret and must not be disclosed. Neither are they to disclose the fact of indictment found until after arrest of the accused. The testimony they have heard may be disclosed in a proper case if necessary.

Under our system we are loath to believe that any inherent reason exists for denying any right after indictment which is possessed in case of an information.

The grand jury does not determine and are not clothed with the power to decide the question of bail in any case. The court or judge is to exercise that power in all cases; necessarily, then, the authority which fixes the bail and who is to settle that matter must determine the right to bail. That authority, then, must decide, and in that authority alone resides the duty and right to decide as to whether or not the proof is evident or the presumption great. Is this to be determined for the court in all capital cases by a grand jury, generally unskilled in the law, incapable of judging as to the materiality or admissibility of testimony? We cannot so conclude. No doubt the finding of an indictment is prima facie evidence that the proof is evident and that the presumption is great, and if not so, the legislature may well so provide, thus throwing the burden of proof upon the defendant to establish the contrary. To this extent the statute is certainly a valid law. Can the law making power go further and make any particular method of presentment for crime a conclusive element in determining the right to bail? If it can assume that authority in capital cases, why not with the same propriety and legality extend it to the case of any other felony

after indictment? Does the fact that a question of proof or presumption arises in the one case and not in the other involve any distinction upon principle? We think not, if, as it seems entirely clear to us, a constitutional right to bail exists in either case, in the one case absolutely without proof, in the other just as absolutely if the proof is not evident or the presumption not great. At common law it was within the discretion of the magistrate, judge or court to allow or deny bail in all cases, and was usually denied in cases of felony punishable by death. This has been so changed by the State constitutions in this country generally, as well as by our own, so as to give bail as a matter of right in those cases where it is allowable. This was even asserted in the case of People v. Tinder, 19 Cal., 539, although in that case the right to bail in a capital case after indictment was denied. The opinions of Justice Field, who announced the decision of the court in Tinder's case, are entitled to very great consideration. The course of his reasoning in that case, however, is hardly applicable to our conditions and under our rules of procedure before grand juries. Reviewing a similar constitutional guaranty, he adverted to the fact that under their statutes an indictment was more than a mere accusation; that the grand jury were expressly required to receive "none but legal evidence, and the best evidence in degree, to the exclusion of hearsay or secondary evidence," and "that it is their duty to weigh all the evidence submitted to them, and when they have reason to believe that other evidence within their reach will explain away the charge, they should order such evidence to be produced," and "ought to find an indictment when all the evidence before them, taken together, is such as in their judgment would, if unexplained or uncontradicted, warrant a conviction by the trial jury." And the learned judge adds: "Such being the case, an indictment is something more than a mere accusation based upon probable cause; it is an accusation based upon legal testimony, of a direct and positive character, and is the concurring judgment of at least twelve of the grand jurors." The California case is supported also by the case of Hight v. U. S., 1 Morris (Ia.), 410, and possibly in

one or two other States, where it does not clearly appear, however, a constitutional provision like our own exists.

A contrary view is held in Alabama, Arkansas, Colorado, Florida, Illinois, Indiana, Mississippi, Nevada, Ohio, South Carolina, and Texas. In many, if not, indeed in all of those States, the constitution or statutes give the right to bail in language very like or entirely similar to the provisions of our constitution. The doctrine announced in California as applicable generally under such a constitutional guaranty is repudiated, and the view is held that the indictment furnishes presumptive evidence only of the guilt of the accused, and does not conclusively establish that the proof is evident or the presumption great. The great weight of authority, therefore, unquestionably sustains this latter proposition, and the reasoning upon which it is supported appears to us entirely sound. In re Losasso, 15 Colo., 163; Lumm v. State, 3 Ind., 293; Lynch v. People, 38 Ill., 494; Ex parte Wray, 30 Miss., 673; Schmidt v. Simmons, 137 Ind., 93; State v. Summons, 19 Ohio, 139; In re Finlan, 20 Nev., 141; Ex parte Bryant, 34 Ala., 270; Ex parte Banks, 28 Ala., 89; Ex parte Gord, 19 Ark., 410; Ex parte Kittrel, 20 Ark., 499; Ex parte McAnally, 53 Ala., 495; Yarbrough v. State, 2 Tex., 519; Street v. State, 43 Miss., 1.

It must be borne in mind that our laws are intended to be framed upon the humane idea that no man is to be punished until he has been convicted; that an accused is only confined in jail before trial and conviction to secure his presence at the trial, and, if convicted, that he may be compelled to undergo sentence; that, however, if by sureties his presence can as well be secured, it is deemed wise and just that he shall, until trial and conviction, be allowed his liberty, except in capital offenses where the proof is evident or the presumption great, in which cases it is deemed that the offense is so grave that it is not safe to allow the presence of the accused to be secured by bail. If, then, taking the constitution alone, an indictment found would not of itself preclude the right to bail in capital cases, is the statute prevailing in that respect? We have already commented upon this question to some extent. This

court held in the case of In re Boulter, 39 Pac., 875 (supra), that the constitutional right to bail extended to a person until conviction and not after; we were then considering a case other than capital. So far as, and in the cases wherein, the right is given by the constitution, we think the time during which bail is to be allowed is the same in all cases, in capital as well as other felonies, the only difference being that in the former the right only exists when the proof is not evident and the presumption not great. Until conviction, then, under the constitution, all persons are bailable, without exception, in all felonies, other than capital, with the sole exception already stated in capital cases. The statute is not to be construed as merely providing that an indictment shall be conclusive evidence of the evident proof or great presumption. It does not so state. That part is contained in a proviso, which is preceded by the provision similar to the one found in the constitution allowing bail in all cases except capital where the proof is evident or the presumption great, but it adds, "Provided, that no person shall be admitted to bail after an indictment has been found against him charging a capital offense." This, then, is an exception to the preceding provision of the statute. It unquestionably thus provides that after indictment found, whatever may be the proof, whether evident or not, whatever may be the presumption, whether great or otherwise, no bail shall be permitted. This is the construction which we think must be given to the statute. It must be manifest that such a law is restrictive of the constitutional right. It entirely disregards in case of indictment the only exception to the right to give bail embraced in the bill of rights.

In our opinion, therefore, the statute, instead of attempting to render a certain fact conclusive evidence of the proof or presumption which excludes the right to furnish bail, clearly denies bail under certain circumstances stated in utter disregard of the nature or effect of the proof or presumption. To this extent the legislature cannot go. Suppose, however, we take the other view, viz.: that the statute in effect but constitutes the finding of an indictment conclusive that the proof is evident and the presumption great. It is clearly within the

authority of the legislature to say that the indictment shall be taken as prima facie evidence of such facts. We very sincerely question its power to go further and make it conclusive evidence. We understand the rule to be even with respect to civil rights that the legislature cannot make certain facts conclusive as evidence. Cooley Const. Lim., 450, and much less it seems to us can it declare in a criminal proceeding that a certain fact, such as an indictment found, shall be conclusive against the prisoner when he seeks to obtain the benefit of a right granted him by the constitution and prevent or entirely preclude him from asserting and proving the contrary. As the constitution is supreme, and neither the legislature nor the courts can disregard it, and as the rights which it guarantees to the people were intended to be and should be upheld, we have, in view of this, and all the foregoing considerations, arrived at the conclusion that, notwithstanding the statute, a person charged with a capital offense by indictment is bailable unless the proof is evident or the presumption great.

Answering the questions submitted for our decision, therefore, we say:

To the First Question. The court can and should entertain an application for bail by a defendant, after indictment found and returned by a grand jury charging murder in the first degree, when such application is based upon the fact that the proof of guilt is not evident and the presumption of guilt is not great.

To the Second Question. An indictment is not conclusive evidence that the proof of guilt is evident or the presumption great in an application for bail in a capital case. It is, however, prima facie evidence thereof.

To the Third, Fourth and Fifth Questions. In so far as Chap. 23, of the Session Laws of 1890, attempts to forbid bail after an indictment, regardless of whether or not the proof is otherwise evident or the presumption of guilt otherwise great, it is in conflict with Section 14 of Article 1, of the constitution; and in such case, as stated in the fifth question, if upon a proper hearing and sufficient showing it appears that the

proof is not evident or the presumption not great, under the rules hereinafter stated the accused should be admitted to bail in such sum as considering the gravity of the offense charged, will, in the judgment of the court or judge, procure his attendance and presence for trial.

The Sixth Question must be answered under our conclusions stated in this opinion in the affirmative, if upon a hearing the court concludes that the proof is not evident and the presumption is not great.

To the Seventh Question. Upon the facts therein stated we give an affirmative answer.

To the Eighth Question. The burden of proof is upon the defendant, and both parties are entitled to compulsory process to secure the attendance of witnesses. The method of procedure will readily suggest itself to the court under the principles announced in this opinion.

To the Ninth and Tenth Questions. No, the inquiry should not be limited to determining the probable degree of the homicide, such inquiry may and properly should include the determination of the evident character of the proof, or the strength of the presumption respecting whether or not the defendant did the killing, or was connected with it as a guilty agent.

We think that the best rule in ultimately determining whether the prisoner should be admitted to bail or not, is that bail should be refused in all cases where a judge would sustain a conviction for murder in the first degree if pronounced by a jury, on such evidence of guilt as is exhibited on the hearing for bail, and where the evidence is of less efficacy to admit to bail. In addition it should be said, the indictment, while not of itself conclusive against the right to bail, may be taken into consideration by the court, together with the evidence in determining the question of admission to bail. It may, in a doubtful case, have the effect of turning the scale. It should not be entirely ignored, but it is a circumstance like any other, to be taken into consideration for whatever effect in the light of the other facts, and together with them it may have upon the mind of the court or judge.

GROESBECK, C. J., and CONAWAY, J., concur.